Steve SAMEK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 56A03–9706–CR–214.

Court of Appeals of Indiana.

Dec. 10, 1997.

Rehearing Denied Feb. 19, 1998.

Anthony B. Ratliff, Randle Ratliff & Ratliff, Rensselaer, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

Steve Samek ("Samek") appeals his convictions for burglary and theft, claiming that the State's failure to preserve an audio taped confession violated his due process rights.

We affirm.

## FACTS

On May 22, 1997, tools were stolen from the toolshed of Robert Churchill. Tire tracks from a three-wheeled vehicle led from the toolshed onto Samek's property. Based upon this evidence, the Indiana State Police obtained a search warrant for Samek's home. As the police were leaving after searching Samek's home, Samek arrived at his home in a van driven by his houseguest, Douglas Jacobsen ("Jacobsen"). The police found several tools in the back of the van that had been taken from Churchill's toolshed. Samek was arrested, but Jacobsen was not. That evening Jacobsen implicated Samek in the burglary.

Two days after Samek's arrest, Trina Samek, Samek's wife, gave the police an audiotape of a male voice confessing to the burglary of the Churchill toolshed. Trooper Anthony DeLello ("DeLello"), the investigating officer for the Churchill burglary, listened to the audiotape and, based upon the comments of the speaker, thought that the person speaking on the tape was Jacobsen. DeLello did not, however, identify the speaker on the tape based upon the speaker's voice.

Because he was concerned about the admissibility of the tape at trial, DeLello took the tape to the prosecutor, Edward Barce ("Barce"). After explaining the circumstances surrounding the tape and his belief that the speaker on the tape was Jacobsen, DeLello played the tape for Barce. After listening to the tape, Barce told DeLello not to place the tape into evidence. Barce did not, however, tell DeLello to destroy the tape. Neither Barce nor DeLello can remember whether DeLello took the tape with him or left it with Barce. The tape was never found after this meeting.

Nearly seven months later, on January 21, 1997, Samek filed a motion to dismiss the Information, claiming that the State had failed to preserve exculpatory evidence in the form of the tape. After a hearing on this matter on January 24, 1997, the trial court denied Samek's motion. Prior to trial, the State filed a motion in limine to prevent any testimony about the contents of the tape. The trial court granted this motion in limine, stating that the tape was inadmissible hearsay. At the time of the trial, Jacobsen could not be located and was assumed to have fled

Indiana. Ultimately, the jury convicted Samek of burglary and theft. Samek now appeals.

## ISSUE

Samek raises one issue on appeal which we restate as:

I. Whether the trial court erred by denying Samek's motion to dismiss.

## DISCUSSION

Samek contends that his due process rights were violated by the State's failure to preserve the tape and, therefore, the trial court erred when it denied his motion to dismiss. To support this contention, Samek argues that the tape constituted material exculpatory evidence making its loss a violation of his due process rights. The State argues that Samek's due process rights were not violated because the tape did not constitute material exculpatory evidence but was instead merely potentially useful evidence. The State also argues that Samek has failed to prove that the failure to preserve the tape was in bad faith. In response to this argument, Samek contends that the evidence surrounding the disappearance of the tape shows bad faith on the part of the State.

■ The appropriate test to apply when deciding whether a defendant's due process rights have been violated by the State's failure to preserve evidence depends on whether the evidence in question was "potentially useful evidence" or "material exculpatory evidence" as these terms were employed in *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). When the evidence in question is defined as material exculpatory evidence, the State's good or bad faith in failing to preserve the evidence is irrelevant. *Id.* (citing *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). However, when the evidence in question is merely potentially useful evidence, the defendant must

show that the State's failure to preserve the evidence was committed in bad faith in order to prove a violation of his due process rights. *Id.*

■ The U.S. Supreme Court in *Youngblood* defined potentially useful evidence as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* To rise to the level of material exculpatory evidence, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984); *See also Curry v. State,* 643 N.E.2d 963, 979 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* Exculpatory is defined as "[c]learing or tending to clear from alleged fault or guilt; excusing." BLACK'S LAW DICTIONARY 566 (6th ed. 1990).

■ We note that in *Bivins v. State,* 642 N.E.2d 928 (Ind.1994) *cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996) our supreme court found no due process violation where a tape recording of a defendant's preliminary advisements had been negligently destroyed or recorded over since the defendant failed to establish bad faith. In doing so, however, the court agreed that the tape would have provided "material evidence." We think that in doing so the court was using "material" in the traditional evidentiary sense rather than as a term of art as employed by the Court in *Youngblood.*[1] (The defendant had not contended that the tape was exculpatory, but merely that it would support his assertion that he felt under duress at the time he gave his statement, which by all accounts had not been recorded. Thus, the evidence which had been lost was clearly only potentially useful evidence.) To avoid any possible confusion in the future, we use the terms as the Court did in *Young-*

---

1. While citing *Youngblood* the court did not discuss the distinctions between "potentially useful evidence" and "material exculpatory evidence" in its decision.

*blood.* Thus, when the evidence at issue falls within the definition of material exculpatory evidence, the defendant need not establish bad faith in order to prove a due process violation. Bad faith is relevant only when the evidence merely meets the definition of potentially useful evidence. *Youngblood,* 488 U.S. at 57, 109 S.Ct. at 337.

With the appropriate test in mind, there are two issues to resolve. First, we must determine whether the tape constituted potentially useful evidence or material exculpatory evidence. Second, if we determine the tape to be potentially useful evidence, we must determine whether Samek has shown that the failure to preserve the tape was done in bad faith.

■ The tape contained a male voice claiming to have committed the burglary of Churchill's toolshed. The person making the taped confession did not identify himself and was not positively identified as Jacobsen. This confession also did not state that Samek did not participate in the burglary, but instead simply stated that the speaker had committed the burglary. There is also no evidence in the record as to the circumstances surrounding the making of the tape.[2] We hold this tape to be potentially useful evidence, not material exculpatory evidence. Without the identification of the speaker and evidence as to the circumstances surrounding the making of the tape, the tape does not prove that Jacobsen committed the burglary instead of Samek, as Samek contends. The tape would be potentially useful because with proper identification, verification, and supporting evidence the tape *might have* helped to exonerate Samek. Standing alone, the tape fails to rise to the level of material exculpatory evidence.

■ Because we have found the tape to be potentially useful evidence, we now must determine whether Samek has shown bad faith on the part of the State. *Id.* Bad faith is

defined as being "not simply bad judgment or negligence, but rather implies the conscious doing of wrong because of dishonest purpose or moral obliquity." BLACK'S LAW DICTIONARY 139 (6th ed. 1990). Samek argues that the facts that the tape was important to his case, that Barce told DeLello not to place the tape into evidence, and that the tape was last seen at the meeting between Barce and DeLello proves bad faith on the part of the State. The State counters that Samek's claim is merely conjecture and that both Barce and DeLello stated that the loss of the tape was completely inadvertent.

■ The record reveals that though Barce told DeLello not to place the tape in evidence, he did not tell DeLello to destroy the tape. DeLello testified that the tape was simply misplaced, not purposefully destroyed. This evidence does not prove "conscious doing of wrong," but is instead more closely akin to negligence on the part of Barce and DeLello. We, therefore, hold that Samek has failed to show that the State's failure to preserve the tape was done in bad faith. The trial court's denial of Samek's motion to dismiss was, therefore, correct.

Affirmed.

HOFFMAN and RUCKER, JJ., concur.

---

2. We note that Trina Samek, who gave the tape to the police, did not testify about the tape or the

circumstances under which it was made.