**Ralph E. CHISSELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 33A05–9805–CR–238.

Court of Appeals of Indiana.

Jan. 26, 1999.

Transfer Denied March 29, 1999.

Michael R. Burrow, Jeffrey S. Neel, Wolf & Burrow, Greenfield, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

### OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Following a jury trial, Ralph E. Chissell was convicted of Operating a Motor Vehicle While Intoxicated ("OWI"), a class A misdemeanor; Operating a Motor Vehicle With a Blood Alcohol Level ("BAC") of .10 Percent or Greater, a class C misdemeanor; and Public Intoxication, a class B misdemeanor.[1] The court enhanced Chissell's conviction for OWI to a class D felony based upon a prior OWI conviction[2] and sentenced Chissell to one and one-half years, with all but sixty days suspended to probation. The court withheld judgment on the public intoxication and operating a motor vehicle with a BAC of .10 percent or greater convictions. Chissell now appeals, and the State requests that we instruct the trial court to enter judgments where judgments were withheld.

We affirm in part and dismiss in part.

### ISSUES

The parties present three issues for review which we restate as:

1. Whether Chissell's conviction should be reversed due to the State's failure to preserve videotapes of the police administering sobriety tests to Chissell.

2. Whether the State presented sufficient evidence to prove beyond a reasonable doubt that Chissell drove his vehicle while impaired.

3. Whether the trial court erred when it withheld judgment on Chissell's convictions for operating a motor vehicle with a BAC .10 percent or greater and public intoxication.

### FACTS

On March 6, 1998, Richmond Police Officer Brian Thomas observed Chissell driving a vehicle with inoperative tail lights. As Officer Thomas followed the vehicle, Chissell failed to come to a complete stop at a stop sign. Officer Thomas activated the overhead lights on his vehicle, and Chissell pulled over. As Chissell stepped out of his vehicle, Officer Thomas noticed that Chissell smelled of alcohol, his eyes were bloodshot and his speech was slurred.

Officer Thomas then radioed Captain Mel England to assist him with field sobriety tests. Captain England administered finger-to-nose and a heel-to-toe tests. Chissell's balance was unsteady, he had difficulty walking and could not touch his index finger to his nose. Officer Thomas arrested Chissell and transported him to jail. At police headquarters, Officer Thomas administered additional tests, all of which Chissell failed. Chissell's BAC was .16 percent.

### DISCUSSION AND DECISION

#### Issue One: Police Videotapes

Chissell argues that the State's loss or destruction of allegedly material evidence impaired his rights to a fair trial and due process of law. In particular, Chissell asserts that he was "substantially prejudiced"

---

1. *See* IND.CODE § 9–30–5–2; § 9–30–5–1; § 7.1–5–1–3.

2. *See* IND.CODE § 9–30–5–3.

because the State did not preserve police videotapes of him performing sobriety tests both at the scene and at the jail.

To determine whether a defendant's due process rights have been violated by the State's failure to preserve evidence, we first decide whether the evidence in question was "potentially useful evidence" or "materially exculpatory evidence." *Samek v. State*, 688 N.E.2d 1286, 1288 (Ind.Ct.App. 1997) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988)), *trans. denied*. The United States Supreme Court has defined potentially useful evidence as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289. The State's failure to preserve potentially useful evidence does not constitute a denial of due process of law "unless a criminal defendant can show bad faith on the part of the police." *Id.* at 58, 109 S.Ct. at 337, 102 L.Ed.2d at 289; *Bivins v. State*, 642 N.E.2d 928, 943 (Ind.1994), *cert. denied*, 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996).

On the other hand, materially exculpatory evidence is that evidence which "possesses an exculpatory value that was apparent before the evidence was destroyed" and must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422 (1984). Unlike potentially useful evidence, the State's good or bad faith in failing to preserve materially exculpatory evidence is irrelevant. *Samek*, 688 N.E.2d at 1288.

During Officer Thomas' cross-examination, defense counsel questioned Thomas about a video camera located inside his police vehicle. Defense counsel then introduced Defendant's Exhibit A, a letter to the prosecutor from Sergeant James Milner, the Systems Administrator of the New Castle Police Department. In that letter, Sergeant Milner reported that although Officer Thomas' vehicle had been equipped with an in-car camera,

Chissell's "stop and arrest for some reason was not recorded." Milner further informed the prosecutor that the videotape of Chissell's sobriety tests recorded at the jail had been reused.

Chissell asserts that the tapes would be materially exculpatory evidence "if [they] contained Chissell passing the field sobriety tests." While a defendant is not required to prove conclusively that the destroyed evidence was exculpatory, there must be some indication that the evidence was exculpatory. *Johnson v. State*, 507 N.E.2d 980, 983 (Ind.1987), *cert. denied*, 484 U.S. 946, 108 S.Ct. 335, 98 L.Ed.2d 362 (1987). We cannot assume that the destroyed evidence contained exculpatory material when the record is devoid of such indication. *Id.* Chissell provides no evidence in support of his contention that the videotapes contained apparent exculpatory value. Rather, he asks that we speculate. We conclude that the videotapes do not rise to the level of materially exculpatory evidence.

Assuming the videotapes *may* have shown Chissell passing the sobriety tests, we agree that the tapes were potentially useful evidence. To show a denial of due process, however, Chissell must demonstrate bad faith. *See Bivins*, 642 N.E.2d at 943. The record shows that while the in-car camera should have started to record when Officer Thomas activated his overhead lights, the camera did not work. Officer Thomas testified that he did not turn off the in-car camera during Chissell's stop. He also stated that the type of in-car cameras used at the time of Chissell's arrest were later replaced due to recurring problems. In addition, Sergeant Milner testified that the videotape of the sobriety tests Chissell performed at the jail was unavailable because it had been reused. There is no showing that the tapes were erased intentionally or negligently by the police in order to suppress material evidence. *See Johnson*, 507 N.E.2d at 980. Chissell has not shown bad faith. Thus, we conclude that Chissell was not denied due process of law.

## Issue Two: Sufficiency of the Evidence

Chissell argues that we should reverse his conviction for OWI because the State failed to prove beyond a reasonable doubt that he drove his vehicle while "impaired." We must disagree.

In reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Fields v. State*, 679 N.E.2d 898, 900 (Ind.1997). We look only to the probative evidence supporting the verdict and the reasonable inferences therefrom to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* The conviction will stand as long as there is substantial evidence of probative value to support it. *Id.*

To sustain Chissell's conviction, the State was required to show that the defendant operated a motor vehicle while intoxicated. IND.CODE § 9–30–5–2. "Intoxicated" means being under the influence of alcohol such that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to the extent that endangers a person. *Hornback v. State*, 693 N.E.2d 81, 85 (Ind.Ct.App.1998); IND. CODE § 9–13–2–86.

In this case, Officer Thomas testified that after he stopped Chissell for a traffic violation, Chissell's eyes were bloodshot, he smelled of alcohol and had slurred speech. Thomas also stated that Chissell was unsteady on his feet and failed the field sobriety tests he and Captain England administered. For example, Chissell could not touch his index finger to his nose, he failed the heel-to-toe test and could not recite the alphabet as requested. Captain England, a twenty-four year veteran, stated that he believed Chissell was intoxicated. At police headquarters, Chissell's BAC was .16 per-

cent. We conclude that the State proved beyond a reasonable doubt that Chissell drove his vehicle in an impaired condition of thought and action and that his condition posed a danger to himself or others on the public roadways. We affirm Chissell's conviction for driving while intoxicated. *See Boyd v. State*, 519 N.E.2d 182, 184–85 (Ind. Ct.App.1988) (evidence that driver has committed traffic violation, exhibits signs of intoxication and has a BAC of .10 percent or more is sufficient to sustain conviction for OWI).

## Issue Three: Withheld Judgments

The trial court entered judgment on the OWI conviction but withheld judgment on the operating a vehicle with a BAC of .10 percent or greater and public intoxication convictions. The State asks us to remand the case with instructions to the trial court to: (1) enter judgment on the operating a motor vehicle with a BAC of .10 percent or greater and public intoxication convictions, (2) merge the conviction for operating a motor vehicle with a BAC of .10 percent or greater with the conviction for OWI, and (3) impose a sentence for the public intoxication conviction.[3]

We first address the State's contention that it's claim is properly before us. In *Abron v. State*, 591 N.E.2d 634, 638 (Ind.Ct. App.1992), *trans. denied*, this court stated that "a trial court's failure to sentence a defendant in accordance with statutory requirements constitutes fundamental error, and may therefore be presented by the State for the first time on appeal." Here, however, the State does not complain that the sentence imposed was contrary to law but that judgment and sentence were not entered.[4] The State's reliance on *Abron* is misplaced.

3. We agree with the State that had the court entered judgment on the operating a motor vehicle with a BAC of .10 percent or greater conviction, we would order the court to vacate the conviction on the lesser-included offense. *See Kremer v. State*, 643 N.E.2d 357, 361 (Ind.Ct.App. 1994) (operating a motor vehicle with a BAC of .10 percent or greater is a lesser-included offense of OWI and, thus, double jeopardy principles require the court to vacate the conviction for the lesser-included offense), *trans. denied*.

4. Specifically, the State argues that the court committed fundamental error when it failed to comply with Indiana Code § 35–38–1–1(a), which provides that "[a]fter a verdict, finding, or plea of guilty, if a new trial is not granted, the court shall enter a judgment of conviction."

We are aware that some trial courts withhold judgment as a case management device for various purposes. While it may be useful, this informal practice finds no sanction in the law. Trial courts may not withhold judgment nor indefinitely postpone sentencing. *Robison v. State*, 172 Ind.App. 205, 359 N.E.2d 924 (Ind.Ct.App.1977); *see* IND.CODE § 35–38–1–1(a) (after a verdict, the court shall enter a judgment of conviction). As a matter of law, a "withheld judgment" or "judgment withheld" (also commonly known as a "JW") is a nullity. Thus, a withheld judgment is not appealable because it is neither a final judgment nor an appealable interlocutory order. *Robison*, 172 Ind.App. at 205, 359 N.E.2d at 924.

Further, a party cannot appeal from the failure of a trial court to enter judgment. *State ex rel. v. Scott Circuit Court*, 203 Ind. 572, 576–77, 181 N.E. 523, 524 (1932). The only available remedy is a writ of mandamus. *Id.* Our supreme court has exclusive, original jurisdiction over actions for writs of mandamus against inferior state courts based on the alleged failure of the respondent court to act when it was under a duty to act, in this case to compel the trial court to comply with Indiana Code § 35–38–1–1(a). Ind. Original Action Rules 1(A), (B) and 2(A); Ind. Appellate Rule 4(A)(5). Thus, we have no authority to instruct the trial court to enter judgments on the jury verdicts and must dismiss the State's prayer for relief.

Affirmed in part and dismissed in part.

SHARPNACK, C.J., and BAILEY J., concur.