Harry L. ROBERSON, III,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–0108–CR–504.

Court of Appeals of Indiana.

April 26, 2002.

David W. Stone, IV, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Harry Roberson brings an interlocutory appeal of the trial court's denial of his motion to dismiss the charge of Possessing Material Capable of Causing Bodily Injury by Inmate, a class C felony.[1] He presents the following restated issue for review: Did the State's failure to preserve the alleged dangerous device violate his due process rights?

We reverse.

On October 27, 2000, a shakedown was conducted at the Madison County Jail as a routine security measure. Upon searching Roberson's one-person cell, a questionable item was found under his bed mat by Eric Holtzleiter, a civilian jail officer. The item was confiscated and, following an internal disciplinary hearing, Roberson was found guilty of possessing a weapon or anything that could be used as a weapon. On November 2, 2000, Roberson received fifteen days lockdown for the violation.

Thereafter, on December 11, 2000, the State charged Roberson with possession of a dangerous device or material by a prisoner. The information specifically alleged that Roberson possessed two wooden sticks wrapped on the one end and sharpened to a point on the other end and that the device is used or is intended to be used in a manner that is readily capable of causing bodily injury.

On June 19, 2001, Roberson made an oral motion to dismiss the charge after he discovered that the State had discarded[2] the alleged dangerous device, as Roberson had never been given an opportunity to examine the device. Further, the only photograph of the device is of poor quality. He argued that without the device he could not prepare a defense because the condition of the stick was crucial to his case.

The trial court held an evidentiary hearing on the motion to dismiss on June 26, 2001. The following additional information may be gleaned from the hearing. The wooden sticks referred to in the information were two halves of a food spreader (similar to a tongue depressor). These spreaders were sold in the commissary to spread food items such as peanut butter and were allowed in the prisoners' cells. The spreader had been split long-ways and had rough edges. The halves were laid on top of each other, with one of the ends wrapped in toilet paper.

Three jail employees testified at the hearing. Holtzleiter testified that three to four inches of wood protruded from the paper and that the round edges appeared to have been taken off just slightly, creating a slight point. He did not remember how sharp the device was but he believed it could hurt someone. Holtzleiter's first impression was that the device was a weapon. Nilena Vaughn, the jail investigator at the time, testified that she had seen other sticks fashioned by prisoners into weapons and that, in her opinion, the device found in Roberson's cell was a weapon capable of causing bodily injury. She stated that the device was ragged but sharp and that she could not foresee any

---

1. Ind.Code Ann. § 35–44–3–9.5 (West 1998).

2. The jail investigator opined that after she retired, the device may have been discarded in the process of relocating certain offices and clearing evidence from closed cases out of the evidence cabinet. This likely occurred prior to the criminal charges being filed against Roberson.

legitimate reason for the device. Finally, Scott Mellinger, the disciplinary hearing officer, described the device as: "Two (2) pieces of what I would typically call a popsicle stick held somewhat together in a make shift fashion with what appeared to be paper or tape at the bottom as if fashioned together in a handle." *Transcript* at 69–70. Mellinger testified that he had no doubt that it was fashioned to be a weapon. He further testified that it was readily capable of causing bodily injury.

At the conclusion of the hearing, the trial court denied the motion to dismiss, stating:

> Prisoner in possession of dangerous device. So the trier of fact has to find that the item was in fact a dangerous device. I see it as a close case. It is possible that having the item[,] physically having the item so it could be admitted into evidence[,] would be helpful to the State to prove their allegations. It is possible that having the item to introduce into evidence could help the defense because depending on the condition that it is in they might argue that this is really not a dangerous device. Albeit, that Sheriff Mellinger and former Officer Vaughn and even Jail Officer Holtzleiter all testified that in their view it was a weapon. But that is opinion evidence. And the trier of fact needs to view it. I see it as a close case. I honestly don't really know. As you folks know I have had another case where evidence was mistakenly, inadvertently, negligently I guess is the right word, destroyed. And that was a drug case. However, in that case there was in fact an examination by a forensic evidence analyst and a report. And that went to trial without the drugs, without the cocaine, and there was a conviction and it was affirmed. That is a little easier in my mind because there is no legitimate use for having cocaine. At least none that I know of. I think

> this is a case that is ripe for appellate review.... In my view the officers[,] the witnesses[,] can describe what they saw and then it is up to the trier of fact. But, I concede, I admit that having the item actually is easier for you and your client to argue, "No this is not a dangerous device, this is...." whatever you say it is. "It is simply a broken stick. It is useful for the peanut butter." That has a certain charm to it. The case is complicated by the fact that I am told, at least there was evidence that jail guest [sic] can lawfully and properly acquire these for approved uses. I guess allegedly breaking it and sharpening it and fashioning it into a weapon which causes the other problem. I am[,] it is not often that I get a case where both sides are all right. I think this is one of those. I think you are both right. And I think it is for the Court of Appeals or the folks with appellate responsibilities to give us some guidance as to where we should go. So I am denying your motion to dismiss.

*Transcript* at 90–93. On July 5, 2001, Roberson filed a motion to certify the decision for interlocutory appeal, and the motion was granted the same day. We granted Roberson's petition to certify interlocutory appeal on August 10, 2001.

 The defendant in a criminal case has the right to examine physical evidence in the hands of the State. *Rita v. State,* 663 N.E.2d 1201 (Ind.Ct.App.1996), *aff'd in relevant part,* 674 N.E.2d 968 (Ind. 1996). The failure of the State to preserve such evidence may present grounds for reversal based on denial of due process of law. *Id.* To determine whether a defendant's due process rights have been violated, we first decide whether the evidence in question was " 'potentially useful evidence' " or " 'materially exculpatory evidence.' " *Chissell v. State,* 705 N.E.2d 501,

504 (Ind.Ct.App.1999) (quoting *Samek v. State*, 688 N.E.2d 1286, 1288 (Ind.Ct.App. 1997), *trans. denied* ), *trans. denied.*

██ If the evidence was only potentially useful, the defendant must establish bad faith on the part of the State. *Albrecht v. State*, 737 N.E.2d 719 (Ind.2000) (citing *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)). The United States Supreme Court has described potentially useful evidence as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. at 57, 109 S.Ct. 333.

██ The State's duty to preserve exculpatory evidence is:

"limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

*Albrecht v. State*, 737 N.E.2d at 724 (quoting *Holder v. State*, 571 N.E.2d 1250, 1255 (Ind.1991)); *see also California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Unlike potentially

useful evidence, the State's good or bad faith in failing to preserve materially exculpatory evidence is immaterial. *Chissell v. State*, 705 N.E.2d 501.

██ As the trial court has noted, the instant case is complex. In order to obtain a conviction, the State must establish, among other things, that the device was intended to be used in a manner readily capable of causing bodily injury. *See* I.C. § 35–44–3–9.5. Because there were legitimate reasons for possessing such a stick, establishing the stick's condition (i.e., how it had been modified) is critical to the State's case.[3] The testimony regarding the device is absolutely crucial and determinative, as there is no independent evidence except for one blurry photograph. We further observe that the character of the device is the sole basis of Roberson's defense.

In light of the critical importance of this evidence to both the prosecution and the defense, we cannot agree with the State that the device would have simply been potentially useful evidence and, therefore, that Roberson must establish bad faith. *Cf. Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (defendant convicted with independent evidence, as State did not attempt to use the lost evidence in its own case in chief).[4] Clearly,

---

**3.** This is in contrast to a situation where an object that is by definition a weapon, such as a gun or knife, is found in a prison cell. In such a case, the determination of whether the device is used or intended to be used in a manner that is readily capable of causing bodily injury generally is clear and does not turn on an examination of the specific device.

**4.** The Pennsylvania Supreme Court similarly distinguished *Arizona v. Youngblood:*

The prosecutor in *Youngblood* did not attempt to make use of incriminating evidence denied to the defendant. Both the prosecution and defense were denied the

use of "evidence" which was unavailable because no tests were conducted on samples until the passage of time made such testing futile. There was no suggestion by the prosecutor that the missing evidence would have incriminated the defendant, and it was pure speculation by the defendant that the evidence, if it existed, might have exonerated him. In this case, however, the prosecutor conducted an examination and is attempting to introduce the results of his examination as evidence against the defendant while denying to the defendant any possible benefit to be derived from an examination of the primary evidence in

this evidence, at the very least, "might have been expected to play a significant role in the suspect's defense." *See Holder v. State,* 571 N.E.2d at 1255. This is evident from application of the test for materially exculpatory evidence.

The second portion of that test is easily met, as Roberson cannot secure comparable evidence by other reasonably available means. This evidence was unique and cannot be precisely replicated or replaced. The evidence was not, and in reality could not have been, subjected to objective testing prior to its loss.[5] Furthermore, we cannot say that the photograph sufficiently depicts the character and dangerousness of the device.

Less evident is whether the first portion of the test can be satisfied. The glaring question is whether the device had an exculpatory value that was apparent before its destruction. In this regard, the State points to the testimony of three government officials who each opined that the device was fashioned to be a weapon and was capable of causing bodily injury. Under the specific circumstances of this case, however, these are clearly subjective opinions. It is a troubling prospect when the primary evidence is lost or destroyed while in the care of the State, and the State is then permitted to argue that the evidence had no exculpatory value because government officials "knew" that the device was indeed a weapon. *See United States v. Belcher,* 762 F.Supp. 666 (W.D.Va.1991) (dismissing charges where officers destroyed alleged marijuana plants before they had been laboratory tested).[6]

As noted previously, the device was allegedly fabricated from items that Roberson was allowed to possess in his cell—items that have legitimate uses and that are generally not construed as weapons. It is certainly conceivable that had Roberson and the trier of fact been able to examine the device, a different conclusion regarding its intend use and ability to cause bodily injury might have been reached. Therefore, we conclude that there is some indication that the evidence possessed an exculpatory value that, however tenuous, was

---

the case. It is one thing to conduct a trial in which neither side has evidence because the prosecution failed to take affirmative steps to preserve it, and it is quite another to conduct a trial in which the prosecution has evidence but the defendant does not because the prosecution lost it. In the former, *Youngblood,* situation, due process is not violated unless there was bad faith by the prosecution; in the latter, Deans, situation, to permit the prosecution to use the evidence would deprive appellant of due process irrespective of good faith or bad faith on the part of the prosecution. *Commonwealth v. Deans,* 530 Pa. 514, 518–19, 610 A.2d 32, 34 (1992). In *Deans,* the defendant was charged with the forgery of a lottery ticket. The state lost the ticket after a state police document examiner analyzed the ticket but before charges had been filed against the defendant.

**5.** Without deciding, we note that the results of accurate and reliable testing in certain instances could constitute comparable evidence. For example, chemical analyses of narcotic substances produce consistent, highly reliable results.

**6.** In determining the exculpatory value of the destroyed plants, the crucial item of evidence at trial, the *Belcher* court concluded:

The court is certain that law enforcement officials are almost always correct in determining, by a simple visual inspection, whether a plant is marijuana or not. But, it is the "almost" that convinces the court not to allow this prosecution to go forward. Law enforcement officials are not infallible, and it is certainly conceivable that laboratory results might occasionally exculpate someone accused of manufacturing marijuana or some other drug. Given the facts in this case, the court finds that it would be a violation of due process to prosecute the Belchers.

*Id.* at 673.

evident to the State prior to its destruction.[7] Without such evidence, Roberson is faced with the monumental task of presenting a defense in which he is obliged to accept the subjective opinions of three government officials. Under the specific circumstances of this case, we hold that it would be fundamentally unfair and a violation of due process to allow the State to proceed in this manner.

Judgment reversed.

VAIDIK, J., concurs.

BARNES, J., dissents with separate opinion.

BARNES, Judge, dissenting with separate opinion.

I respectfully dissent. The majority here categorizes the evidence the State misplaced or destroyed as "materially exculpatory," and reverses the trial court's denial of Roberson's motion to dismiss based on its reading of *Arizona v. Youngblood.* I do not agree that the evidence was, in fact, "materially exculpatory," and posit that it was, at best, "potentially useful" to Roberson. As the majority correctly states, to be "materially exculpatory," there must be some indication in the record that the evidence possessed exculpatory value that was apparent before the evidence was destroyed. *Albrecht,* 737 N.E.2d at 724. I see no such indication in the record. As such, it was incumbent upon Roberson to show bad faith on the part of the State in its mishandling of the evidence. *Youngblood,* 488 U.S. at 57–58, 109 S.Ct. 333. I find no such evidence.

Although the slip-shod handling of this evidence was certainly not a perfect example of law enforcement procedure, there is a photograph of the alleged weapon that could be viewed by a fact finder. I would remand this case and allow the State to offer the testimony of the three officers as to the description of the device. I would prohibit them from answering the ultimate question, i.e., was the device "dangerous," by invoking Indiana Evidence Rule 403 and concluding the prejudicial impact of such testimony would outweigh its probative value under the circumstances of this case. In that way, a fact finder would decide the question and the State would not "gain an advantage" from its mishandling of the evidence, a concern the majority correctly points out.

---

7. While a defendant is not required to prove conclusively that the evidence was exculpatory, there must be some indication in the record that it was exculpatory. *Chissell v. State,* 705 N.E.2d 501. "Exculpatory is defined as '[c]learing or tending to clear from alleged fault or guilty; excusing.' " *Samek v. State,* 688 N.E.2d at 1288 (quoting BLACK's LAW DICTIONARY 566 (6th ed. 1990)).