**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**SCOTT L. BARNHART**
Keffer Gilley Barnhart LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 20 2013, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES JAMES POPP, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1205-CR-197 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Mary Margaret Lloyd, Judge
Cause No. 82D02-1104-FA-413

**February 20, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Charles Popp appeals his convictions for sexual misconduct with a minor as a Class C felony, nine counts of sexual misconduct with a minor as Class B felonies, and intimidation as a Class A misdemeanor. He raises two issues on appeal: whether the trial court erred when it denied his motion to dismiss or exclude evidence; and whether the court properly allowed the jury to review evidence during deliberations. Concluding that the court did not err on either issue, we affirm.

## Facts and Procedural History

When A.R. was twelve or thirteen, her mother worked with Popp's girlfriend, and eventually the families became friends. At some point, Popp gained custody of four of his nieces and nephews, and A.R. would come over to babysit them. In December of 2009, when A.R. was fourteen, she fell asleep on Popp's couch. Popp came up next to her and put his hand down her pants, telling her that it was okay. A.R. ran to the bathroom and Popp told her that if she told anyone, he would kill her. A.R. continued to go to Popp's house after this, and the incidents continued and escalated, with Popp forcing A.R. to participate in oral sex, and attempting intercourse with her, despite her screaming for him to stop. A.R. kept a diary specifically of the incidents with Popp, and referred to this diary at trial in order to recall exactly what Popp did to her on a given date. Eventually, around the summer of 2010, A.R. was able to come up with an excuse to stop going to Popp's house. In April of 2011, A.R. spoke to a school resource officer and then to a detective about Popp. The detective then questioned Popp at the police station and recorded the interrogation. On April 18, 2011, Popp was charged with twenty-one counts stemming from these incidents.

In August 2011, Popp deposed A.R. It appears that at the deposition Popp first learned that A.R. had kept a second diary, and Popp claims that there was an unrecorded discussion following the deposition in which someone indicated that the second diary might be of interest to Popp. The next month Popp filed a pretrial discovery motion requesting a copy of the second diary. Thereafter, it was learned that the second diary had been destroyed. There was conflicting testimony about both when the second diary was destroyed, and whether it might have had any information regarding the incidents with Popp. A.R.'s youth pastor, Hugh Crowe, told a detective that A.R. had destroyed a diary during an exercise in which members got rid of something from their past, and that the exercise had taken place in the summer of 2011. In an affidavit and at trial, Crowe testified that the exercise had taken place in March of 2011, and that A.R. had told him that the diary contained some information about what happened to her in her case. At trial, A.R. referenced the diary that she kept of the incidents in order to remember the details of each event, and that diary was admitted into evidence. She also testified that she kept a separate second diary in which she had written about normal daily events like school and sports, but not the incidents with Popp. A.R. testified that she had destroyed the second diary in October or November of either 2010 or 2011; she did not remember which year. In both January and March of 2012, Popp filed motions to dismiss the case or in the alternative to exclude evidence or testimony regarding A.R.'s diary; both motions were denied.

A jury trial was held in March 2012. After deliberations had started, the jury requested the recording of the detective's interrogation of Popp. The State argued that the jury should be permitted to review the recording, and Popp argued that the jury could

3

not focus on one item of evidence. The court decided to bring the jury in to see whether there was a disagreement among the jury members as to the testimony in the recording. The court questioned the jury foreperson:

> THE COURT: Alright. The question are you wanting to re-hear that testimony, is that what you're asking?
> JUROR RIDEOUT: We just had issues...
> THE COURT: Is there a disagreement regarding what is in that exhibit...
> JUROR RIDEOUT: Yes.
> THE COURT: That would possible [sic] assist you by hearing that.
> JUROR RIDEOUT: Yes.
> THE COURT: Are - regarding that testimony?
> JUROR RIDEOUT: (Inaudible).
> THE COURT: Alright. You may be seated, sir. And, if there's any question and further questions from the jury, they always need to be submitted in writing.

Transcript at 242-43. The court then replayed the recording of the interview for the jury, over Popp's objection, and without allowing question or comment from the jury. The jury was then taken back to the jury room to resume deliberations.

The jury found Popp guilty of sexual misconduct with a minor as a Class C felony, nine counts of sexual misconduct with a minor as Class B felonies, and intimidation as a Class A misdemeanor; Popp was found not guilty on the remaining ten counts. The court sentenced Popp to a total of fifty-five years executed. This appeal followed.

<u>Discussion and Decision</u>

I. Standard of Review

Because Popp had the burden of proving all facts necessary to support a motion to dismiss, we review the trial court's ruling for an abuse of discretion and will only reverse if the evidence leads inescapably to the conclusion that he was entitled to dismissal. <u>State v. Gill</u>, 949 N.E.2d 848, 849 (Ind. Ct. App. 2011), <u>trans. denied</u>; <u>Wright v. State</u>, 700

4

N.E.2d 1153, 1155 (Ind. Ct. App. 1998); see also Ind. Code § 35-34-1-8(f). Likewise, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. Franciose v. Jones, 907 N.E.2d 139, 144(Ind. Ct. App. 2009), aff'd on reh'g, trans. denied.

## II. Motion to Dismiss or Exclude Evidence

Popp argues that the State, "by way of the actions of A.R., intentionally destroyed a second diary and precluded Mr. Popp from seeing it or using it in his defense." Brief of Appellant at 11. Popp concedes that there was no bad faith on the part of the State, but argues that the State should nonetheless be held responsible for the destruction of the diary.

Popp is correct that destruction of or failure to preserve evidence by the State may constitute a denial of due process. Evidence is classified as either potentially useful evidence or material exculpatory evidence. Samek v. State, 688 N.E.2d 1286, 1288 (Ind. Ct. App. 1997), trans. denied. For potentially useful evidence, the State's destruction of evidence must have been committed in bad faith in order to be a violation of due process; good or bad faith is irrelevant where the destroyed evidence was material exculpatory evidence. Id. Popp seems to argue that bad faith is irrelevant here because the second diary was material exculpatory evidence, although he only argues the point of materiality and not the exculpatory nature of the diary. We have serious doubts as to how the diary would fare if we were to address its material exculpatory nature. However, Popp seems to miss the larger point, which is that the diary was never in the State's possession, and there is no evidence that the State had anything to do with its destruction or was even

5

aware of the impending destruction before the fact. We therefore need not address whether the second diary may have risen to the level of material exculpatory evidence.

We find no case law to support holding the State responsible for destroyed evidence where the State was not in possession of the evidence. See Glasscock v. State, 576 N.E.2d 600, 602 (Ind. Ct. App. 1991) ("Where the police and the prosecution did not possess evidence, the rule requiring reversal of a conviction based upon evidence which was negligently destroyed does not apply.") disapproved of on other grounds by Abney v. State, 821 N.E.2d 375 (Ind. 2005); Everroad v. State, 570 N.E.2d 38, 46-47 (Ind. Ct. App. 1991) (" [T]he Everroads cite no authority which extends this rule to cases involving evidence never possessed by the prosecution or police.") aff'd in part, vacated in part on other grounds, 590 N.E.2d 567 (Ind. 1992) and abrogated on other grounds by Cook v. State, 810 N.E.2d 1064 (Ind. 2004). Therefore, regardless of the material exculpatory nature of the diary—and regardless of the timing of its destruction—the State here is not responsible because they never had the diary in their possession and there is no evidence or suggestion that they directed or were involved in its destruction. Without the State's involvement, there was no denial of due process when the diary was destroyed. We conclude that it was not an abuse of discretion for the trial court to have denied Popp's motion.

### III. Jury's Review of Evidence

Popp next argues that the trial court erred by replaying the detective's interrogation of him. Popp correctly notes that there is both a statute and case law relevant to the jury's review of evidence once deliberations have started.

Indiana Code section 34-36-1-6 states:

> If, after the jury retires for deliberation:
>> (1) there is a disagreement among the jurors as to any part of the testimony; or
>> (2) the jury desires to be informed as to any point of law arising in the case;
> the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Our supreme court has interpreted the statute to require that juries expressly manifest a disagreement about the testimony in order for the statute to apply, and that a jury request is not in itself an inherent expression of disagreement such that the statute would automatically be triggered. Bouye v. State, 699 N.E.2d 620, 627-28 (Ind. 1998). What appears to remain unanswered is the extent to which a judge may or should question a jury to determine whether there is a disagreement if one is not obvious in the request— that is, whether the jury must expressly manifest a disagreement independently and contemporaneously with the request, or whether the existence of a disagreement can be elicited from the jury by the court.

We believe the court may conduct an inquiry when the initial request does not unequivocally indicate a disagreement. See Foster v. State, 698 N.E.2d 1166, 1170 (Ind. 1998) (noting, less than two months after Bouye, that the trial court must supply the requested information after it, "in the exercise of its discretion, has determined that a question posed or information requested by the jury relates to 'a disagreement' among the jurors"); Counceller v. State, 466 N.E.2d 456, 461 (Ind. 1984) (stating that, "[w]e do not believe that the judge committed any error by not asking if there was disagreement before asking if the jury wanted the testimony replayed," where the issue was the sequence of events in which the court asked the jury if it wanted testimony replayed, and then

7

determined whether there was a disagreement) overruled on other grounds by Wright v. State, 658 N.E.2d 563 (Ind. 1995); Pettrie v. State, 713 N.E.2d 910, 913 (Ind. Ct. App. 1999) ("Nonetheless, the trial judge could, upon receiving the jury's note and in her discretion, question the jury further to determine whether the jurors had a disagreement as to the content of the requested testimony."); but see Robinson v. State, 699 N.E.2d 1146, 1149 (Ind. 1998) ("Because the note in the instant case merely indicates what items the jury wanted to see and does not suggest any type of disagreement, under Bouye the statutory provision does not apply."). We believe that this comports not only with the "disagreement" requirement of the language of the statute, and its interpretation by our supreme court in Bouye, but also with the reality that juries will almost certainly not know the language of the statute, and so it is unreasonable to expect them to independently and explicitly indicate any disagreement when asking to reexamine evidence—even though such a disagreement may well exist. As such, the court did not err here by questioning the jury, and once a disagreement was established, the court was required by statute to provide the requested information to the jury.

However, even if the statute does not apply, there is applicable common law. Guidelines have been established regarding which materials a court, in its discretion, should allow a jury to review during deliberations. Robinson v. State, 699 N.E.2d at 1149-50. Considerations include "(i) whether the material will aid the jury in a proper consideration of the case; (ii) whether any party will be unduly prejudiced by submission of the material; and (iii) whether the material may be subjected to improper use by the jury." Id. at 1150.

8

For the first factor, we presume that the material aided the jury in proper consideration of the case unless there is evidence to the contrary, which here there is not. Goodrich v. Ind. Mich. Power Co., 783 N.E.2d 793, 798 (Ind. Ct. App. 2003), trans. denied. In Goodrich, we determined that the second factor weighed in favor of finding an abuse of discretion because the trial court sent only the requested exhibit to the jury room rather than all of the exhibits. Id. Here however, the nature of the material requested appears to be different from that in Goodrich, as there is no indication in that opinion that the requested exhibit was something other than a hard copy of documentary evidence. Our supreme court has noted previously that while audio tapes are technically exhibits, the jury deliberation statute has been construed to apply to tapes even though the statute refers only to "testimony." Robinson v. State, 699 N.E.2d at 1149. And we have previously held that there was no error where a court played a video tape for the jury in open court after deliberations had begun. Sturma v. State, 683 N.E.2d 606, 610 (Ind. Ct. App. 1997). We do not therefore believe the jury here was unduly prejudiced when the court replayed the recording of Popp's interrogation. Finally, there is no indication here that the material was subjected to improper use by the jury.

Popp states that he was "unduly prejudiced by the jury's review of his interrogation because it unduly and needlessly emphasized that evidence," but does not explain how he was prejudiced, nor does he elaborate on how the other two factors would weigh in favor of finding an abuse of discretion. Br. of Appellant at 15. For its part, the State replies that Popp is implying that he was unduly prejudiced merely because a piece of evidence was replayed for the jury, and if that were the case, then no evidence could ever be replayed for the jury once deliberations started. We agree that the mere replaying

9

of a recording at the jury's request does not itself unduly prejudice the jury, and we conclude that the trial court did not abuse its discretion in replaying the interrogation for the jury.

## Conclusion

Concluding that the trial court did not abuse its discretion in either denying Popp's motion to dismiss or in replaying the interrogation for the jury, we affirm.

Affirmed.

MAY, J., and PYLE, J., concur.