**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 30 2014, 10:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STACY R. ULIANA**
Bargersville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KRISTIN A. HOUSSAIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A04-1307-CR-330 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Charles K. Todd, Judge
Cause No. 89D01-1105-FC-30

**April 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

In this interlocutory appeal, Kristin Houssain ("Houssain") appeals the trial court's denial of her motion to dismiss her charges of forgery[1] and attempting to obtain a controlled substance by fraud.[2]

We affirm.

ISSUE

Whether the trial court erred in denying Houssain's motion to dismiss.

FACTS

On March 10, 2011, Lori Hamilton ("Hamilton"), a pharmacy technician at a Kroger Pharmacy in Richmond, Indiana, received a prescription that appeared to be altered. Nurse practitioner Debbie Sexton ("Sexton") wrote the prescription for Houssain for 2.5 milligrams of hydrocodone. Hamilton noticed that prescription had been vigorously underlined so that dosage would appear as 7.5 milligrams of hydrocodone. Hamilton asked her colleague, Valerie Napier ("Napier"), to look at the prescription, and Napier agreed that the prescription appeared to be altered. Hamilton and Napier testified that they had never seen Sexton draw dark underlines on previous prescriptions. Hamilton then contacted Sexton, who in turn contacted Detective Jon Chilcoate ("Detective Chilcoate"), an investigator with the Richmond Police Department. Sexton asked Detective Chilcoate to investigate the prescription submitted to the Kroger Pharmacy.

---

[1] Ind. Code § 35-43-5-2(b)(3).

[2] I. C. §§ 35-41-5-1; 35-48-4-14(c).

2

Detective Chilcoate immediately went to the Kroger Pharmacy and spoke with Tom Payton ("Payton"), the pharmacist on duty. Payton showed Detective Chilcoate the original prescription with the questioned alterations. Detective Chilcoate made a copy of the prescription, leaving the original at the pharmacy. Detective Chilcoate then went to Sexton's office to speak with her.

Detective Chilcoate showed Sexton the prescription submitted to the pharmacy and asked her if she had made the markings in question. Sexton replied no and showed Detective Chilcoate the prescription she had written for Houssain. Sexton keeps copies of all prescriptions that she writes. Detective Chilcoate made a copy of the unaltered prescription for his file.

On May 16, 2011, the State charged Houssain with forgery, a Class C felony, and attempting to obtain a controlled substance by fraud, a Class D felony. On November 8, 2012, Houssain filed a motion to dismiss the charges. Alternatively, Houssain's motion requested that the trial court preclude the State from introducing testimony or evidence relating to lost or destroyed evidence. Houssain filed her motion because the Kroger pharmacy lost or destroyed the original prescription submitted.[3]

On February 13, 2013, the trial court held a hearing on the motion to dismiss. Houssain presented testimony from Jim Steffen ("Steffen"), a forensic document examiner. Steffen testified that there was clearly an alteration between the prescription Sexton wrote and the prescription submitted to Kroger. However, he stated that had he had access to the original prescription, he would have been able to conduct additional

---

[3] Payton died during the pendency of this case. In a letter to Houssain's attorney, the deputy prosecutor stated that Kroger may have purged many documents retained by Payton after his death.

tests to determine whether the alterations were purposeful or accidental. In addition, Steffen testified that it was entirely possible that the original prescription had been purposefully altered and the original could be inculpatory of Houssain's guilt. He also stated that even if he were able to determine whether the alterations were purposeful or accidental, he would have no way of determining who actually altered the original prescription.

On May 8, 2013, the trial court entered an order denying Houssain's motion to dismiss. Houssain filed a motion to certify the trial court's order for interlocutory appeal on July 10, 2013. The trial court granted the motion and certified its order. Thereafter, we accepted jurisdiction.

DECISION

Houssain claims that the trial court erred in denying her motion to dismiss. Specifically, she argues that she was entitled to dismissal because the lost or destroyed evidence in question is materially exculpatory and that the State failed to preserve it. The State counters that the original prescription was potentially useful, rather than materially exculpatory, evidence.

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Filice v. State*, 886 N.E.2d 24, 32 (Ind. Ct. App. 2008), *trans. denied*. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. *Id.*[4]

---

[4] Houssain, relying on our Indiana Supreme Court's decision in *Austin v. State*, 997 N.E.2d 1027 (Ind. 2013), claims that our standard of review should be de novo. Even if we reviewed Houssain's claim de novo, we would have reached the same conclusion.

4

The defendant in a criminal case has the right to examine physical evidence possessed by the State. *Roberson v. State*, 766 N.E.2d 1185, 1187 (Ind. Ct. App. 2002), *trans. denied*. The failure of the State to preserve such evidence may present grounds for dismissal of charges based on the denial of due process of law. *Id*.

Whether a defendant's due process rights have been violated by the State's failure to preserve evidence depends on whether the evidence in question was "potentially useful evidence" or "material exculpatory evidence." *Samek v. State*, 688 N.E.2d 1286, 1288 (Ind. Ct. App. 1997) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57, (1988)), *reh'g denied, trans. denied*. When claiming that a due process violation has occurred when the evidence in question is "potentially useful evidence," a defendant must show that the State's failure to preserve the evidence was committed in bad faith. *Id*. When the evidence in question is "material exculpatory evidence," the State's good or bad faith actions are irrelevant. *Id*.

Potentially useful evidence has been described as "evidentiary material of which no more can be said that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. Material exculpatory evidence "must possess an exculpatory value that was apparent before the evidence was destroyed, and be of a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984).

Houssain urges us to reverse the trial court by comparing the facts in her case to our decision in *Roberson*. In *Roberson*, Madison County jail officers confiscated a

5

wooden food spreader available to prisoners through the jail's commissary. *Roberson*, 766 N.E.2d at 1186. The spreader, similar to a tongue depressor, had been split long-ways, exposing rough edges. *Id.* The jail officers stated that the edges appeared to have been shaped to a point. *Id.* Roberson was disciplined internally by the jail, and the State charged Roberson with possession of a dangerous device by a prisoner. *Id.* During the pendency of the case, the spreader confiscated from Roberson was destroyed by jail officials. *Id.* Only a blurry photograph of the spreader remained. *Id.*

After finding out that the spreader had been destroyed, Roberson made an oral motion to dismiss the charges, claiming that he could not prepare a defense because the condition of the spreader was crucial to his case. *Id.* The trial court held a hearing and, after acknowledging that it was a "close case" and that the issue was "ripe for appellate review," denied Roberson's motion to dismiss. *Id.* at 1187.

Upon interlocutory review, we reversed the trial court and held that the evidence in question was materially exculpatory because (1) the spreader was Roberson's sole basis of his defense, and he could not secure comparable evidence; and (2) under the specific circumstances of that case, a trier-of-fact could have examined the spreader and reached a different conclusion regarding its intended use, giving it an exculpatory value, albeit tenuous. *Id.* at 1189-90.

However, our decision in *Roberson* is distinguishable from Houssain's case. Unlike *Roberson*, the prescription submitted is not the sole basis of Houssain's defense. For example, Houssain claims that "[f]rom the original prescription, [she] could argue that the markings were not made with the intent to change the dosage of the prescription,

6

but rather were made innocently or not even by her." (Houssain's Br. 12). Yet, Steffen, Houssain's expert, made the same observations during his testimony having only examined the copies of the prescription. In addition, Houssain states that "the pressure applied[,] the color of the pen, the existence of other markings or writings on the original all must be considered to determine the intent behind the markings. They would be readily apparent before its destruction." *Id*. However, Steffen testified that "if [he] had had the original [prescription], [he] would have examined it more thoroughly *microscopically* to determine if the paper had been tampered with." (Tr. 83) (emphasis added). Given that Steffen articulated some of Houssain's possible defenses using photocopies of the prescription and the fact that he would have performed more testing, the original prescription submitted is, at most, potentially useful evidence and not materially exculpatory.

As stated previously, the State's failure to preserve potentially useful evidence does not constitute a denial of due process of law unless a criminal defendant shows bad faith on the part of the State. *Samek*, 688 N.E.2d at 1288. Houssain, however, does not allege bad faith on the part of the State.[5] Accordingly, Houssain's right to due process of law was not violated, and the trial court did not err in denying her motion to dismiss.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.

---

[5] "Houssain has not raised on appeal that the State's failure to preserve the original prescription rises to the level of bad faith." (Houssain's Br. 7).