STATE OF INDIANA *v.* CLAYTON L. HUMMEL, AND JOSEPH D. SMITH.

[No. 2-875A209. Filed May 26, 1977. Rehearing denied July 11, 1977. Transfer denied December 20, 1977.]

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellant.

*Joseph M. Johnson, DeVoss & DeVoss,* of Decatur, for appellees.

## NATURE OF THE CASE

LOWDERMILK, J.—This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

Plaintiff-appellant, State of Indiana (State), has perfected this appeal following the dismissal of two informations charging defendants-appellees, Clayton L. Hummel (Hummel), and Joseph D. Smith (Smith)[1] with causing the death of another while driving under the influence of intoxicating liquor.[2]

## FACTS

### HUMMEL CASE:

At approximately 11:45 P.M., on September 16, 1974, Hummel was driving his automobile between 60-70 m.p.h. down State Road 27, Adams County, Indiana. Hummel, struck from the rear, a horse and buggy occupied by the Hilty family resulting in the death of their two children.

Trooper William Kuhn of the Indiana State Police investigated the accident. Trooper Kuhn, while administering first aid, noticed an odor of alcohol on Hummel's breath. Trooper Kuhn testified that he observed Hummel walking in a meandering fashion, he had blood shot eyes, and he talked with "thick speech."

Hummel was taken by ambulance to the hospital. While at the hospital, a nurse at the request of the police, took a blood sample from Hummel. Hummel consented to the sample being taken. An analysis of the sample indicated that Hummel was presumably driving while under the influence of intoxicating liquor. However, neither the technician nor the equipment had been certified by the Indiana University School of Medicine—Department of Toxicology.

---

1. These two cases were ordered consolidated pursuant to Ind. Rules of Procedure, Appellate Rule 5(B).

2. Ind. Code 9-4-1-54(b)(1).

On September 26, 1974, a warrant was issued for the arrest of Hummel based upon a probable cause affidavit executed by Kuhn.

*SMITH CASE:*

On September 12, 1974, at approximately 11:30 P.M., Smith, while traveling south on State Road 27, Adams County, Indiana, collided with a vehicle being driven by Mark Allen Woodard. Mr. Woodard died as a result of the collision.

James Rich, an eyewitness to the accident, testified that while driving south on State Road 27 a vehicle passed him on the right-hand side of the road, went into a ditch, came out of the ditch cutting back in front of him, and then crossed over into the left-hand side of the road thereupon colliding with the vehicle being driven by Woodard.

Decatur Police Officer Kenneth Jennings investigated the accident. He testified that he observed five beer cans either in or near Smith's automobile. Only one had been opened prior to the accident.

Smith was taken to the hospital where a sample of his blood was extracted and analyzed. The results showed that Smith was presumably driving while under the influence of intoxicating liquor. However, neither the technician nor the equipment used to conduct the test had been certified by the Indiana University School of Medicine—Department of Toxicology.

On September 20, 1974, a warrant was issued for the arrest of Smith based upon a probable cause affidavit executed by Jennings, which resulted in the arrest of Smith on September 25, 1974.

## ISSUES

1.  Whether the Indiana Implied Consent Law, Ind. Code 9-4-4.5-1—9-4-4.5-6, superseded in part Ind. Code 9-4-1-134.[3]

---

3.  All references to the Indiana Code are to the 1976 Ed.

2.   Whether Hummel or Smith was under arrest prior to the service of the arrest warrants.

3.   Whether the State's affidavits of probable cause were sufficient to allow a magistrate to reasonably determine that a crime had been committed.

## DISCUSSION AND DECISION

*ISSUE ONE*

The State contends that the trial court erred in holding that Ind. Code 9-4-1-134 was superseded in part by Ind. Code 9-4-4.5-3. We agree.

IC 9-4-1-134 provides as follows:

"Arrest for violations.—A peace officer may, without a warrant, arrest a person, in case of violations of section 39[9-4-1-40] of this act and section 52(b) [subsection (b) of 9-4-1-54] of this act if the violation of said section 52(b) [subsection (b) of 9-4-1-54] is coupled with accident which in fact has been committed, though not in his presence, when he has reasonable cause to believe that the violation was committed by such person. The procedure prescribed herein shall not be exclusive of any other method prescribed by law for the arrest and prosecution of a person for an offense of like grade. [Acts 1939, ch. 48, § 166, p. 289; 1951, ch. 221, § 1, p. 637.]"

Ind. Code 9-4-1-54(b) (1) provides in pertinent part:

"(b)   Operating or driving while under the influence of intoxicating liquor or narcotic or other drugs. Any person who operates or drives a vehicle while that person is under the influence of intoxicating liquor or unlawfully under the influence of narcotic or other habit forming or dangerous depressant or stimulant drugs shall be guilty of a criminal offense.

(1)   Any person who while under the influence of intoxicating liquor or unlawfully under the influence of narcotic or other habit forming or dangerous, depressant or stimulant drugs operates or drives a vehicle and when so operating or driving causes the death of another person, is guilty of a felony and, upon conviction, shall be imprisoned for a determinate period of not less than one [1] year nor more than five [5] years; or shall be imprisoned for a

determinate period of not less than one [1] year nor more than two [2] years to which shall be added a fine of not less than two hundred fifty dollars [$250] nor more than five thousand dollars [$5,000]. Upon conviction, the court shall recommend the suspension of the current driving license of the person so convicted for a period of one [1] year and the commissioner of motor vehicles shall comply with the recommendations, and should the court fail to make the mandatory recommendation, or should the court fail to make the appropriate mandatory recommendation, the commissioner shall proceed to act in the matter as if such recommendation had been made by the court. During the three [3] years following the termination of the suspension, the commissioner may not issue a license to that person unless that person provides and maintains proof of financial responsibility in force pursuant to IC 9-2-1 [9-2-1-1—9-2-1-45]."

Ind. Code 9-4-4.5-3 provides:

"Opportunity to submit to chemical test prior to arrest. —Any law enforcement officer authorized to enforce the laws of this state regulating the use and operation of vehicles on public highways who has probable cause to believe that any person has committed the offense of driving or being in actual physical control of a vehicle while under the influence, in his presence or view, or who has *probable cause to believe that any person who has been involved in a motor vehicle accident has commited [committed] such offense, though not in his presence or view, shall not place such person under arrest for such offense until he has first offered to such person the opportunity to submit to a chemical test for intoxication* to be administered by a person certified as a valid chemical test operator by the department of toxicology of the Indiana University school of medicine. Any such person who agrees to submit to such chemical test for intoxication shall not be arrested for driving while under the influence, but shall accompany the officer to the nearest available chemical test device for the purpose of taking such test as a condition of the driving privilege, (a) If such chemical test results in prima facie evidence that such person is not under the influence, he shall not be arrested and charged with such offense and he shall be released immediately." (Our emphasis)

It is the opinion of this court that IC 9-4-1-134 which allows a police officer to arrest a person who he has probable cause

to believe has violated IC 9-4-1-54(b)(1), *supra,* was not superseded by IC 9-4-4.5-3, *supra.* The trial court was of the opinion that before an arrest for a violation of IC 9-4-1-54(b) could be lawful, it was necessary for the arresting officer to first accord the arrestee an opportunity to submit to a chemical test to discover the extent, if any, of the driver's intoxication.

Ind. Code 9-4-4.5-4 provides in pertinent part as follows:

"Refusal to submit—Judicial hearing prior to arraignment—Matters to be determined—Findings.—When a certification of refusal to submit to a chemical test is submitted to the court, it shall hold a separate hearing on the matter of the test refusal, prior to the arraignment on the criminal charge, for the determination of the following matters:

(a) Did the law enforcement officer have probable cause to believe that the accused had committed the offense of driving or being in actual physical control of a vehicle while under the influence? . . .

(b) Did the law enforcement officer offer to the accused the opportunity to submit to a chemical test for intoxication before placing the accused under arrest for such offense, and was the accused physically and mentally able to provide a breath sample? . . .

(c) The defendant shall be entitled to reasonable written notice of the separate hearing and shall have the right to attend the hearing in person, with or without legal counsel, and to present evidence. The defendant shall also be entitled to examine or cross-examine a witness who presents evidence at the separate hearing. After the issues in (a) and (b) above are determined, the court shall then determine whether or not the accused did in fact refuse to submit to a chemical test for intoxication.

"If the court finds that a refusal to submit to a chemical test for intoxication was because of mental or physical incapacity not related to intoxication, such refusal and the reasons therefor shall be reported to the commissioner of motor vehicles for such action as shall be deemed proper by him on the form provided by the commissioner. If the court finds that the mental or physical incapacity would affect the driving ability of the accused, it shall forward such finding to the commissioner of motor vehicles along with the current driving license of the accused, otherwise, the driving license shall be returned to the accused.

"If the court finds that such refusal was made wilfully and knowingly or because of the state of intoxication of the accused, it shall forward such finding to the commissioner of motor vehicles on a form to be provided by the commissioner, along with the current driving license of the accused, and it shall recommend to the commissioner that the driving privileges of the accused remain suspended for a period of one [1] year from the date of said finding, and the commissioner shall comply with said recommendation.

"*If the court finds that the accused did not refuse to submit to a chemical test for intoxication or if the court finds that the law enforcement officer did not properly proceed under this chapter, no further action shall be taken under this chapter [9-4-4.5-1—9-4-4.5-6], and the court shall proceed with the arraignment, unless the finding includes one of lack of probable cause,* in which case the charge of driving or being in actual physical control of a vehicle while under the influence shall be quashed upon the motion of the court. [IC 1971, 9-4-4.5-4, as added by Acts 1971, P.L. 130, § 1, p. 557; 1974, P.L. 38, § 1, p. 165.]" (Our emphasis)

The failure of an arresting officer to accord the individual arrested an opportunity to be chemically tested for the presence of alcohol in his blood in no way affects the validity of his arrest. The only effect of the arresting officer's failure to provide the arrestee with the chemical test provided for in the Implied Consent Statute would be that the person arrested could not have his driver's license suspended for a period of one year prior to trial. This is made clear by that portion of IC 9-4-4.5-4, *supra,* which provides:

"* * *

If the court finds that the accused did not refuse to submit to a chemical test for intoxication or if the court finds that the law enforcement officer did not properly proceed under this chapter *[9-4-4.5-1—9-4-4.5-6], no further action shall be taken under this chapter, and the court shall proceed with the arraignment,* unless the finding includes one of lack of probable cause, in which case the charge of driving or being in actual physical control of a vehicle while under the influence shall be quashed upon the motion of the court. . . ." (Our emphasis)

Therefore, this court is of the opinion that the trial court erred in holding that IC 9-4-4.5-3, *supra,* superseded IC 9-4-1-134, *supra.*

## ISSUE TWO

The State contends that the trial court erred in holding that neither Hummel nor Smith were arrested at the scene of their respective accidents. We disagree.

In the case of *Dillon* v. *State* (1971), 256 Ind. 412, 275 N.E.2d 312, our Supreme Court at p. 315 discussed the nature of an arrest as follows:

". . . Burns' Ind. Stat. Ann., sec. 9-1004, IC 1971, 35-1-17-1, defines an arrest in the following manner:

" 'Arrest' defined.—Arrest is the taking of a person into custody, that he may be held to answer for a public offense. (Acts 1905, ch. 169, § 120, p. 584.)"

"Burns' Ind. Stat. Ann., sec. 9-1005, IC 1971, 35-1-19-1, provides that an arrest is made in the following manner.

" 'Arrest—How made.—An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, but the defendant shall not be subject to any more restraint than is necessary for his arrest and detention. (Acts 1905, ch. 169, § 127, p. 584).'

"There is no question, under the circumstances, of the instant case as to whether the appellant was in fact under arrest at the time he emptied his pockets in the police station. Failure to inform a defendant that he is 'under arrest' does not in every case mean that he was not in fact placed under arrest. In Pullins v. State (1970), [253] Ind. [644], 256 N.E.2d 553, regarding the necessity of informing a defendant he is 'under arrest' we made this observation:

" 'The obvious purpose of informing a suspect he is under arrest is not to make the arrest legal but to indicate to the person being arrested that his detention is legal, so he will not resist. In Plummer v. State (1893), 135 Ind. 308, 34 N.E. 968, the town marshal, attempting to arrest the defendant without a warrant, failed to inform the defendant of his intention, but simply attacked him. We held that under these circumstances the defendant could

exercise his right to defend himself, the same as against any unprovoked attack. Here no force was employed. The reason for informing appellant he was under arrest was not present. We further note that the fact of intent to arrest may be shown by surrounding facts and circumstances. Here a verbal statement of an intent to arrest would have been an idle ceremony.' (256 N.E.2d 556)"

Applying the definition of an arrest, *supra,* to the facts of the cases at bar, it is the opinion of this court that the trial court did not err in determining that neither Hummel nor Smith were arrested at the scene of their respective accidents.

In Hummel's case the facts most favorable to the judgment of the trial court reveal the following: Hummel was not informed that he was under arrest; he was not guarded at the scene of the accident or at the hospital; he was released from the hospital and proceeded back to work until he was subsequently arrested pursuant to a formal arrest warrant. In short, Hummel was never directly informed by word, or indirectly informed by act, that he was under arrest prior to the execution and service of the formal arrest warrant. The *unmanifested* intention of a police officer to place an individual under arrest is not sufficient to perfect the arrest.

The facts leading up to the formal arrest of Smith parrot those which have been stated above in connection with Hummel's formal arrest and will not be restated here.

There being evidence from which the trial court could have reasonably concluded that the liberty of neither Hummel nor Smith was restrained prior to their arrests pursuant to the formerly executed arrest warrants, and there being no manifestation of intent conveyed to either Hummel or Smith prior to their arrests under the warrants, this court is unable to hold as a matter of law that the trial court erred in finding that Hummel and Smith were not subjected to warrantless arrests at the scenes of their respective automobile collisions.

## ISSUE THREE

The State contends that the trial court erred in its determination that the probable cause affidavits executed by the authorities were insufficient to allow a neutral magistrate to determine that probable cause existed for the issuance of warrants for the arrests of Hummel and Smith. We agree.

In Hummel's case a probable cause affidavit was executed on September 26, 1974, which provided as follows:

> "The undersigned, being first duly sworn upon his oath, deposes and says:
>
> That he is a police officer for the Indiana State Police and did have occasion on the 16th day of September, 1974, to investigate an accident in Adams County, Indiana, wherein the undersigned did determine from various witnesses in said investigation that the above named Defendant was driving an automobile and did crash into the rear of a certain horse drawn buggy as alleged in the Affidavit filed herewith, as a result of which accident two persons, namely, Jonas E. Hilty and Pete E. Hilty, then and there died.
>
> The undersigned further states that he did smell alcohol upon the breath of the above named Defendant at the scene of said accident and did procure a blood sample from said Defendant and said sample has subsequently revealed alcoholic content in excess of the legal [p]resumption of an intoxicated person under the Statute as charged herein.
>
> WHEREFORE, the undersigned prays upon hearing held, the Court issue a warrant forthwith for the arrest of the Defendant herein."

In Smith's case a probable cause affidavit was executed on September 20, 1974, which provided as follows:

> "The undersigned, being first duly sworn upon his oath, deposes and says:
>
> That he is a police officer for the City of Decatur, and did have occasion on the 12th day of September, 1974, to investigate an accident in the City of Decatur, wherein, the undersigned did determine from various witnesses and in the said investigation that the above named Defendant was driving an automobile and did pass a certain car on the right leaving the travelled portion of the roadway and did come back on said highway, and cross the center-line and crash into a car driven by Mark Allan Woodard, as a result

of which accident the said Mark Allan Woodard did thereafter die.

The undersigned further states that he did smell alcohol upon the breath of the above named Defendant and did procure a blood sample from said Defendant and said sample has subsequently revealed an alcoholic content in excess of the legal presumption of an intoxicated person under the Statute as charged herein.

WHEREFORE the undersigned prays that upon hearing held the Court issue a warrant for the arrest of the Defendant herein as charged in the Information filed herewith."

Hummel and Smith contend that the affidavits were insufficient because based in part on the results of an illegal search and seizure, and in part on the conclusions of the affiant thereby failing to relate sufficient facts to the magistrate to enable him to make a meaningful determination of probable cause.

At the outset we reject Hummel's and Smith's contention that the blood tests could not properly be considered by the magistrate solely because the arresting officers did not comply with the Implied Consent Statute by first offering Hummel and Smith the opportunity to take a blood test before being placed under arrest, and because the equipment and test operator were not properly certified.

Ind. Code 9-4-4.5-6 provides in pertinent part as follows:

"Chemical test operators—Selection, training and certification—Inspection of chemical devices—Certificates of inspection exception to hearsay rules.—The director of the state department of toxicology of the Indiana University school of medicine is hereby authorized and empowered to adopt the necessary rules and regulations to set standards for the selection, training, certification and recertification of chemical test operators and to provide for the periodic inspection of chemical test devices. No chemical test for intoxication shall be considered as evidence *for the purpose of this chapter* [9-4-4.5-1—9-4-4.5-6] if it is not performed by a person certified as a valid operator by the state department of toxicology of the Indiana University school of medicine, and no equipment or chemicals shall be used for such chemical tests which has not been inspected and ap-

proved under the rules and regulations adopted by the department. . . ." (Our emphasis)

Therefore, since the probable cause affidavits were not used for the purpose of implementing the mandates of the Implied Consent Statute, i.e., the revocation of driving privileges for a period of one year, the trial court erred in not considering the results of the blood tests for the reasons argued by Hummel and Smith.

We emphasize that what we have said above should not be construed as a judicial seal of approval for the extraction of a blood specimen, testing it, and subsequently using it to obtain an arrest warrant or as evidence to obtain a conviction at trial under any and all circumstances as pointed out, *infra.*

We have heretofore determined that this court cannot hold as a matter of law that the trial court committed error when it found that neither Hummel nor Smith was arrested without a warrant at the scenes of their respective collisions. Therefore, the results of the blood tests cannot be viewed as a search and seizure incident to a lawful arrest within the meaning of *Schmerber* v. *California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

It is axiomatic that the fruits of an unlawful search and seizure cannot be subsequently utilized to serve as the foundation for the issuance of an arrest warrant. Therefore, the scope of our inquiry becomes narrowed to this question—Was the seizure of blood from either Hummel or Smith unlawful?

In the case of Hummel, although the blood was extracted for analysis prior to his arrest, it is the opinion of this court that the results of the blood test could have been considered by the magistrate in determining the existence of probable cause to issue a warrant for his arrest. The reason for our holding is that the record discloses that Hummel, upon being informed that the police desired a blood test, consented thereto. Hummel, having consented to

his blood being extracted for a test, is now in no position to complain that the results proved positive and were used in part to obtain a warrant for his arrest.

It is the opinion of this court that the magistrate being informed of the positive results of Hummel's blood test, coupled with the fact that Officer Kuhn stated under oath that he smelled liquor on Hummel's breath, probable cause existed for the arrest of Hummel and the trial court erred in dismissing the information charging Hummel with causing death while driving under the influence of liquor.

In the case of Smith the record paints a different picture. It appears that Smith was unconscious and therefore oblivious to fact that a sample of his blood was taken for testing. Such being the case, and having already determined that the trial court was justified in concluding that Smith was not under arrest prior to being served with an arrest warrant, we are confronted with the situation where illegally seized evidence is sought to be utilized to justify the issuance of a subsequent arrest warrant. There being no exigent circumstance such as Hummel's consent in the case at bar, the trial court properly recognized that the magistrate could not base his determination of probable cause upon an affidavit which listed facts which were discovered as a result of unconstitutional police tactics.

However, a careful examination of the probable cause affidavit filed in Smith's case convinces this court that there were sufficient facts, independent of the blood test, to convince a neutral magistrate that probable cause existed for the arrest of Smith. Not only did Officer Jennings state under oath that he smelled liquor on Smith's breath, but facts outlining Smith's erratic pattern of driving were brought to the attention of the magistrate. Although the probable cause affidavits filed in the cases at bar are lacking somewhat in specificity, and certainly should not be considered as models for future use, it is the opinion of this court that sufficient

information was contained therein to allow the magistrate to determine that probable cause existed for the arrests of Hummel and Smith, and the trial court therefore erred when it granted Hummel's and Smith's motions to dismiss.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 363 N.E.2d 227.