## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2017, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan L. Cook
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Naveen Rajamony,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 27, 2017

Court of Appeals Case No.
49A02-1606-CR-1301

Appeal from the Marion Superior Court

The Honorable Linda E. Brown, Judge
The Honorable Allan W. Reid, Commissioner

Trial Court Cause No.
49G10-1411-CM-51582

**Bradford, Judge.**

# Case Summary

During the early morning hours of November 14, 2014, Indianapolis Metropolitan Police Officer Richard Eldridge observed Appellant-Defendant Naveen Rajamony operating a vehicle in an erratic and dangerous manner. In light of his observations, Officer Eldridge initiated a traffic stop. During this traffic stop, Officer Eldridge observed signs of intoxication and Rajamony failed three different field sobriety tests. Later on November 14, 2014, Appellee-Plaintiff the State of Indiana ("the State") charged Rajamony with Class A misdemeanor operating a vehicle while intoxicated ("OWI") endangering a person. Rajamony was subsequently found guilty as charged following a jury trial.

On appeal, Rajamony raises the following issues: (1) whether the trial court erred in denying his motion to dismiss, (2) whether the trial court erred in denying his "for cause" challenge to one of the prospective jurors, (3) whether the trial court erred in including language from the charging information in its preliminary instructions to the jury, (4) whether the trial court erred in denying his motion for a mistrial, (5) whether the trial court erred in instructing the jury, and (6) whether the State committed misconduct during its final argument before the jury. We affirm.

# Facts and Procedural History

During the early morning hours of November 14, 2014, Officer Eldridge was off-duty and working as a security officer for the Marriott Residence Inn and Marriott Fairfield Inn located on the west side of Indianapolis. At the time, Officer Eldridge was wearing his full police uniform and stationed in a marked police vehicle. At approximately 4:30 a.m., Officer Eldridge observed a vehicle enter the Marriott complex and stop quickly, causing the tires to squeal. The vehicle accelerated and stopped quickly three more times, squealing the tires each time. In doing so, the vehicle nearly missed striking another vehicle which had to make an evasive maneuver to avoid being hit.

Officer Eldridge watched as the vehicle drove to another part of the hotel complex parking lot before turning around and again approaching Officer Eldridge's location for a second time. Officer Eldridge observed the vehicle strike a curb, with its passenger-side tires going over the top of the curb before landing on the pavement. Because he was concerned that the driver of the vehicle was either impaired or in need of medical attention, Officer Eldridge activated his emergency lights and siren. After driving away from the hotel complex, the vehicle initially pulled over in an area that seemed to be a safe place to stop. However, as Officer Eldridge approached the vehicle, it drove away again and made two turns before finally coming to a stop.

Upon approaching the vehicle, Officer Eldridge identified Rajamony as the driver of the vehicle. Rajamony admitted that he had consumed some amount of alcoholic beverage. In addition, Officer Eldridge could smell the odor of

alcoholic beverage on Rajamony's breath and noticed that Rajamony's eyes appeared bloodshot.

[6] Rajamony agreed to submit to standardized field sobriety tests. Officer Eldridge administered three different field sobriety tests, the horizontal-gaze-nystagmus test, the walk-and-turn test, and the one-legged-stand test. Rajamony failed each of these tests.

[7] Officer Eldridge did not read the implied consent law to Rajamony or offer him a chemical test because he determined that no other DUI officers were available and he needed to remain at the Marriot complex until his security shift ended at 7 a.m. Instead, because he believed that there was probable cause to arrest Rajamony for OWI, Officer Eldridge called for a jail wagon to come and transport Rajamony to the arrestee processing center.

[8] Later on November 14, 2014, the State charged Rajamony with Class A misdemeanor OWI endangering a person. The State also alleged Rajamony committed an unsafe start and an unsafe lane movement on a road which has three or more lanes, both Class C traffic infractions. Prior to trial, Rajamony filed a motion to dismiss. Following a hearing, the trial court denied this motion. Rajamony also filed a motion in limine, arguing that evidence relating to the portable breath test ("PBT") administered by Officer Eldridge was inadmissible. The trial court granted this motion. The matter then proceeded to a jury trial. Following trial, Rajamony was found guilty of Class A misdemeanor OWI endangering a person. This appeal follows.

# Discussion and Decision

Rajamony raises the following contentions on appeal: (1) whether the trial court erred in denying his motion to dismiss, (2) whether the trial court erred in denying his "for cause" challenge to one of the prospective jurors, (3) whether the trial court erred in including language from the charging information in its preliminary instructions to the jury, (4) whether the trial court erred in denying his motion for a mistrial, (5) whether the trial court erred in instructing the jury, and (6) whether the State committed misconduct during its final argument before the jury. We will discuss each in turn.

# I. Motion to Dismiss

Rajamony first contends that the trial court abused its discretion in denying his motion to dismiss.

## A. Standard of Review

We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *An-Hung Yao v. State*, 975 N.E.2d 1273, 1276 (Ind. 2012) (citing *State v. Davis*, 898 N.E.2d 281, 285 (Ind. 2008)). "'An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.'" *Id*. (quoting *Hoglund v. State*, 962 N.E.2d 1230, 1237 (Ind. 2012)). "A trial court also abuses its discretion when it misinterprets the law." *Id*. (citing *State v. Econ. Freedom Fund*, 959 N.E.2d 794, 800 (Ind. 2011)). Further, where a motion to dismiss turns on factual issues, the party

requesting dismissal bears the burden of proving the facts necessary to support the motion. *Smith v. State*, 993 N.E.2d 1185, 1188 (Ind. Ct. App. 2013).

## B. Failure to Offer Chemical Test

[12] In *State v. Bisard*, 973 N.E.2d 1229, 1232 (Ind. Ct. App. 2012), *trans. denied*, we described the nature of Indiana's implied consent statutes as follows:

> Indiana's implied consent statutes appear at Indiana Code chapters 9-30-6 and 9-30-7. Like the rest of the nation, the policy behind our implied consent statutes is to keep roadways safe by removing the threat posed by the presence of drunk drivers. *Ruge v. Kovach*, 467 N.E.2d 673, 681 (Ind. 1984). To that end, the statutes facilitate the collection of evidence of a driver's intoxication. As Justice Rucker observed for a unanimous Court, the statute is "designed as a tool to acquire evidence of blood alcohol content rather than as a device to exclude evidence." *Abney v. State*, 821 N.E.2d 375, 379 (Ind. 2005).

[13] Rajamony argues that he was entitled to dismissal of the criminal charge levied against him because Officer Eldridge failed to offer him a chemical test. In support of this argument, Rajamony relies on Indiana Code section 9-30-6-2, which states, in relevant part, that "[a] law enforcement officer who has probable cause to believe that a person has committed an offense under [the chapters of the Indiana code setting forth the penalties for impaired driving]] shall offer the person the opportunity to submit to a chemical test." However, we have previously concluded that

> The failure of an arresting officer to accord the individual arrested an opportunity to be chemically tested for the presence

of alcohol in his blood *in no way affects the validity of his arrest*. The only effect of the arresting officer's failure to provide the arrestee with the chemical test provided for in the Implied Consent Statute would be that the person arrested could not have his driver's license suspended for a period of one year prior to trial.

*State v. Hummel*, 173 Ind. App. 170, 176, 363 N.E.2d 227, 232 (1977) (interpreting an earlier version of Indiana's Implied Consent Laws) (emphasis added). Given our conclusion in *Hummel*, coupled with the fact that Rajamony has failed to point to any relevant authority supporting his assertion that an officer's failure to offer a chemical test precludes the State from filing an OWI charge, we reject Rajamony's argument in this regard. Having rejected Rajamony's assertion that he was entitled to automatic dismissal of the criminal charges, we conclude that Rajamony may only prevail on this claim if he is entitled to dismissal under the principles of due process.

[14] "The right to due process of law does not include the right to be given a chemical sobriety test in all circumstances." *Parker v. State*, 530 N.E.2d 128, 130 (Ind. Ct. App. 1988). "To hold otherwise, would be to transform the accused's right to due process into a power to compel the State to gather in the accused's behalf what might be exculpatory evidence." *Id.* As such, in order to determine whether Rajamony's due process rights were violated here, we must examine the nature of the alleged wrongdoing.

[15] In order to determine whether a defendant's due process rights have been violated by the State's failure to preserve evidence, "we must first decide whether the evidence in question was 'potentially useful evidence' or

'materially exculpatory evidence.'" *Land v. State*, 802 N.E.2d 45, 49 (Ind. Ct. App. 2004) (quoting *Chissell v. State*, 705 N.E.2d 501, 504 (Ind. Ct. App. 1999), *trans. denied*).

> Potentially useful evidence is defined as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." [*Chissel*, 705 N.E.2d at 504] (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988), reh'g denied ). The State's failure to preserve potentially useful evidence does not constitute a denial of due process of law "unless a criminal defendant can show bad faith on the part of the police." *Id*. "Bad faith is defined as being 'not simply bad judgment or negligence, but rather implies the conscious doing of wrong because of dishonest purpose or moral obliquity.'" *Wade v. State*, 718 N.E.2d 1162, 1166 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*.

> On the other hand, materially exculpatory evidence is that evidence which "possesses an exculpatory value that was apparent before the evidence was destroyed" and must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Chissell*, 705 N.E.2d at 504 (quoting *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984)). "Exculpatory is defined as '[c]learing or tending to clear from alleged fault or guilt; excusing.'" *Wade*, 718 N.E.2d at 1166. The scope of the State's duty to preserve exculpatory evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." *Noojin v. State*, 730 N.E.2d 672, 675 (Ind. 2000). Unlike potentially useful evidence, the State's good or bad faith in failing to preserve materially exculpatory evidence is irrelevant. *Chissell*, 705 N.E.2d at 504.

*Id*. at 49-50.

[16]     In the instant matter, Officer Eldridge encountered Rajamony at approximately 4:30 a.m. on November 14, 2014, while working security at the Residence Inn located on Southern Avenue. The probable cause affidavit prepared by Officer Eldridge in relation to Rajamony's arrest indicates the following:

> Officer Eldridge observed a black Tahoe … drive onto the property at a high rate of speed and stopped immediately squealing the tires. The vehicle accelerated and applied the brakes causing the vehicle to stop suddenly squealing the tires. The vehicle repeated this maneuver several times almost striking another vehicle driving through the property. Officer Eldridge could hear the tires continuing to squeal from the other side of the property. The vehicle returned back toward the front of the property when the vehicle suddenly stopped in the middle of the roadway for several seconds. The vehicle accelerated towards the exit and drove over two curbs. Officer Eldridge initiated a traffic stop activating emergency equipment at Lynhurst and Southern Avenue. The vehicle stopped then pulled to the right shoulder. As Officer Eldridge approached the vehicle, the vehicle drove away and turned south onto Lynhurst Drive. The vehicle drove approximately 200 [feet] before stopping once again at Sam Jones Expressway pulling off the roadway. Officer Eldridge spoke with the driver identified as Naveen Rajamony, who stated he was lost. Officer Eldridge observed the odor of an alcoholic beverage emitting from his person and breath and blood shot eyes. Mr. Rajamony stated he consumed alcoholic beverages and was dropping off his friend at the hotel but could not explain the unsafe, erratic driving behavior. Officer Eldridge asked Mr. Rajamony if he would submit to standard field sobriety test[s] and he stated yes. Officer Eldridge changed location into the parking lot for the safety of Mr. Rajamony and himself. Mr. Rajamony removed his coat and his shoes stating he was more comfortable this way.

Appellant's App. Vol. II, p. 49. Officer Eldridge asked Rajamony if he wore contacts or glasses, had suffered any head trauma, had taken any medications, or had any physical impairments which would hinder his ability to perform the field sobriety tests. Rajamony answered "no" to each of Officer Eldridge's questions. Appellant's App. Vol. II, p. 49. Officer Eldridge then administered the "horizontal gaze nystagmus," "walk and turn," and "one leg stand" tests. Appellant's App. Vol. II, p. 49-50. Rajamony "failed all three tests." Appellant's App. Vol. II, p. 50. Rajamony also agreed to submit to a PBT. Officer Eldridge administered the PBT. The results of the PBT "indicated .17 grams of alcohol per 210 liters of breath." Appellant's App. Vol. II, p. 50.

[17] Officer Eldridge's observations of Rajamony and the results of the PBT were such that it cannot be said that a chemical test would have possessed an apparent exculpatory value. As such, given Officer Eldridge's observations, Rajamony's admission that he had consumed alcoholic beverages, and the results of the PBT, we conclude that, at most, any results generated from a chemical test would only have been "potentially useful evidence." *See Land*, 802 N.E.2d at 49. This is so because if Officer Eldridge had administered a chemical test, no more could be said of the results than that the results "might have exonerated" Rajamony. *See id*.

[18] Again, the "State's failure to preserve potentially useful evidence does not constitute a denial of due process of law unless a criminal defendant can show bad faith on behalf of the police." *Id*. As such, because we conclude that a chemical test could have presented only potentially useful evidence, Rajamony

must show bad faith on behalf of Officer Eldridge in order to prove that he suffered a denial of due process. *See id.* The record contains no such showing of bad faith.

[19] Bad faith requires conscious wrongdoing, not just bad judgment or negligence. The record is devoid of any evidence suggesting that Officer Eldridge acted with a dishonest purpose or moral obloquy. Instead, the record indicates that Officer Eldridge, who again encountered Rajamony while working off-duty as a security officer, (1) felt that he needed to return to the hotel complex as quickly as possible and remain there until the conclusion of his assigned shift, and (2) at approximately 4:30 a.m., failed to arrange for another certified breath test operator to come to the scene and administer a chemical test to Rajamony. One can reasonably infer from the above-discussed PBT results, Rajamony's admission to consuming alcoholic beverages, and Officer Eldridge's observations that a chemical test would have indicated the presence of alcohol in Rajamony's bloodstream and Rajamony presents no argument or evidence indicating otherwise. Further, nothing in the record suggests that Officer Eldridge was trying to harm Rajamony by not offering a chemical test. Under these circumstances, we find no violation of Rajamony's due process rights.[1]

---

[1] We note that although Rajamony asserts that "the Indiana Constitution provides even more protection here than under the U.S. Constitution on these grounds[,]" Rajamony does not develop a separate argument and does not cite to any authority which requires a separate state constitutional analysis following the denial of a motion to dismiss. Appellant's Br. p. 18. "Where a party, though citing Indiana constitutional authority, presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal counterpart, we resolve the party's claim on the basis of federal constitutional doctrine and express no opinion as to what, if any, differences there may be under the Indiana Constitution." *Myers v. State*, 839 N.E.2d 1154, 1158 (Ind. 2005) (internal quotation omitted).

## C. Video Recording of Arrest

Rajamony also claims that the instant criminal charge should have been dismissed because the State failed to preserve an alleged video recording of his arrest. As was the case above, any evidence which might have been gleaned from such a recording would have been, at most, potentially useful and, as a result, there must be a showing of bad faith before the State's failure to preserve this evidence could constitute a denial of Rajamony's due process rights. IMPD Captain Fredrick testified that because technical problems occurred as IMPD transitioned to a new video system in police-issue vehicles between June and December of 2014, he was uncertain whether Rajamony's arrest was recorded. Even assuming his arrest was recorded, Rajamony has presented no argument or evidence indicating that the State's failure to preserve this video was done in bad faith. As such, under these circumstances, we again find no violation of Rajamony's due process rights.

# II. Denial of "For Cause" Juror Challenge

Rajamony also contends that the trial court abused its discretion in denying his for-cause challenge to Prospective Juror S. On appeal, we review the trial court's decision on Rajamony's for-cause challenge for an abuse of discretion. *Oswalt v. State*, 19 N.E.3d 241, 245 (Ind. 2014). "The trial court has the unique position to observe and 'assess the demeanor of prospective jurors as they

answer the questions posed by counsel.'" *Id*. (quoting *Smith v. State*, 730 N.E.2d 705, 708 (Ind. 2000)). "'[O]n appeal, we afford substantial deference to the trial judge's decision ... and will find error only if the decision is illogical or arbitrary.'" *Id*. (quoting *Whiting v. State*, 969 N.E.2d 24, 29 (Ind. 2012)).

[22]     The Federal and Indiana Constitutions guarantee the right to an impartial jury. *Ramirez v. State*, 7 N.E.3d 933, 936 (Ind. 2014). But selecting impartial juries depends upon the parties' discernment and the trial court's discretion to select a panel of objective and unbiased jurors "who will conscientiously apply the law and find the facts." *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Removing prospective jurors—whether peremptorily or for cause—who cannot perform these tasks is the mechanism parties and trial courts use to achieve an impartial jury. *Emmons v. State*, 492 N.E.2d 303, 305 (Ind. 1986).

*Id*. at 245-46.

## A. Overview of Law Relating to the Selection of Juries

### 1. *"For-Cause" and "Peremptory" Challenges*

[23] In selecting a jury, parties have the ability to strike prospective jurors through either for-cause or peremptory challenges. *Id*. at 246. For-cause challenges "are available to exclude any prospective juror whose views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath and thus violates the defendant's Sixth Amendment rights." *Id*. (internal quotations omitted). Peremptory challenges "give parties the nearly unqualified right to remove any prospective juror they

wish—restricted only by the parties' finite allotment of challenges and the constitutional ban on racial, gender, and religious discrimination." *Id*. A juror who qualifies for removal for-cause "may be removed as an 'incompetent juror,' while a juror 'who is not removable for cause but whom the party wishes to strike' peremptorily is termed 'objectionable.'" *Id*. (quoting *Whiting*, 969 N.E.2d at 30 n.7). "Unlike peremptory strikes, strikes for cause require trial court approval, so parties regularly seek appellate review of unsuccessful for-cause motions." *Id*. "This, in turn, requires them to satisfy the exhaustion rule, which is at the heart of this case." *Id*.

### 2. The Exhaustion Rule

"The exhaustion rule requires parties to peremptorily remove jurors whom the trial court refuses to strike for cause or show that they 'had already exhausted [their] allotment of peremptories' at the time they request for-cause removal. *Id*. (quoting *Whiting*, 969 N.E.2d at 30). "And 'even where a defendant preserves a claim by striking the challenged juror peremptorily,' an appellate court will find reversible error 'only where the defendant eventually exhausts all peremptories *and* is forced to accept either an incompetent or an objectionable juror.'" *Id*. (quoting *Whiting*, 969 N.E.2d at 30) (emphasis in original). "Failure to comply with the exhaustion rule results in procedural default." *Id*.

## B. Analysis

In claiming that the trial court abused its discretion in this regard, Rajamony asserts that because the trial court denied his for-cause challenge to Prospective

Juror S, he was forced to accept Juror 10. When reviewing an assertion that a defendant was forced to accept either an incompetent or objectionable juror, we apply "our well-established standard of review to the voir dire context: 'Reversible error occurs only when the error has prejudiced the defendant.'" *Id.* at 249 (quoting *Woolston v. State*, 453 N.E.2d 965, 968 (Ind. 1983)).

[26] In *Weisheit v. State*, the defendant argued that the trial court abused its discretion by denying his for-cause challenge of several prospective jurors. 26 N.E.3d 3, 12 (Ind. 2015). In that case, the defendant satisfied the exhaustion rule by exhausting all of his peremptory challenges. *Id.* at 13. However, the Indiana Supreme Court determined that he failed to establish that an "objectionable" juror served on his jury. *Id.* In reaching this determination, the Indiana Supreme Court noted that the defendant "neither identifies which particular juror(s) were objectionable nor explains why he wished to strike the juror(s); he simply states that in expending all of his peremptory challenges, he was forced to accept other jurors who, although not necessarily positioned to be challenged for cause, were biased against his evidence in either the guilt phase, the penalty phase, or both." *Id.* (citation to internal case record omitted). The Indiana Supreme Court concluded that "[u]nder Oswalt, [defendant's] conclusory assertion that he was forced to accept biased jurors is not nearly enough to find reversible error." *Id.* "Accordingly, Weisheit cannot demonstrate … that the trial court abused its discretion in refusing to excuse twelve jurors for cause." *Id.*

[27] Similar to *Weisheit*, Rajamony presents only a conclusory assertion that he was forced to accept a biased juror. During voir dire, Rajamony, through counsel, stated as follows:

> I had to exercise the peremptory, uh, because the court denied my challenge for cause. The uh, I believe uh that if the court had granted my challenge for cause (inaudible) I would have used my fifth challenge on Juror Number Ten (10); and because of the court's denial of my challenge for cause on [Prospective Juror S], I was forced to otherwise to use that peremptory.

Tr. p. 156. Unlike in *Weisheit*, Rajamony identified which other prospective juror he would have struck from the jury. However, like in *Weisheit*, Rajamony presented no explanation as to why he wished to strike this juror. He merely stated that in expending all of his peremptory challenges, he was forced to accept the juror. Further, Rajamony did not seek to exclude the juror at issue for cause.

[28] Rajamony does not present any argument on appeal as to why he wished to strike Juror 10 from the jury. Because Rajamony failed to provide any argument or evidence explaining why Juror 10 was incompetent or objectionable, we conclude that he has failed to demonstrate that he was prejudiced by Juror 10's inclusion on the jury. As such, like the Indiana Supreme Court in *Weisheit*, we conclude that in this case, Rajamony's conclusory assertion that he was forced to accept a biased juror was not nearly enough to warrant a finding of reversible error. Accordingly, we further

conclude that Rajamony cannot demonstrate that the trial court abused its discretion in refusing to excuse Prospective Juror S.

## III. Preliminary Jury Instructions

[29] Rajamony next contends that the trial court abused its discretion in instructing the jury prior to trial. "'The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse.'" *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015) (quoting *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012)). "In doing so, we consider the instructions as a whole and in reference to each other and do not reverse the trial court for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case." *Id.* (internal quotations omitted).

[30] Rajamony claims that the trial court erred by including certain language contained within the charging information in its preliminary instructions. Specifically, he asserts that it was error for the trial court to include in its preliminary instructions to the jury the line found just above the signature line on the charging information which reads: "I swear or affirm under penalty of perjury as specified by I.C. 35-44-2-1 that the foregoing representations are true." Appellant's App. Vol. II., p. 47.

[31] Initially, we observe that the record presented on appeal does not include a complete copy of the trial court's preliminary instructions to the jury. In fact, the only mention of the preliminary instructions outside of the transcript is one page in Rajamony's Appendix. The Table of Contents refers to "Court's

Preliminary Instruction in question." Appellant's App. Vol. I, p. 2. The corresponding page in the Appendix is merely a copy of the charging information without any indication that said copy was included in any documentation provided to the jury. Given the lack of evidence indicating what documentation was actually submitted to the jury as part of the trial court's preliminary instructions, we will rely on the trial court's reading of the preliminary instructions from the transcript as the best evidence of the trial court's preliminary instructions to the jury.

[32]     The record reveals that at the beginning of trial, the trial court instructed the jury, in relevant part, as follows:

> Under the Constitution of Indiana you have the right to determine both the law and the facts. The Court's instructions are your best source in determining the law. *You are to consider all the instructions together. Do not single out any certain sentence or any individual point or instruction and ignore the others*. In this case the State of Indiana has charged the Defendant with Count 1, Operating a Vehicle While Intoxicated Endangering a Person, a class A misdemeanor. The charge reads as follows: Count I, On or about November 14, 2014 at 5220 Southern Avenue, Naveen Rajamony did operate a vehicle while intoxicated in such a manner that a person was endangered. All of which is contrary to statute and against the peace and dignity of the State of Indiana. The charge which has been filed is the formal method of bringing the defendant to trial. *The filing of a charge or the Defendant's arrest is not to be considered by you as any evidence of guilt*.

Tr. p. 162 (emphases added).

[33] The trial court's reading of the preliminary instructions to the jury did not include the language complained of by Rajamony. Furthermore, even if the preliminary instructions did contain the complained-of information, the trial court explicitly instructed the jury that it was to consider all of the instructions together and that the filing of a charge was not to be considered as evidence of guilt. We have previously concluded that "jury instructions must be considered as a whole and in reference to each other" and "we presume the jury follows the instructions it is given." *R.T. v. State*, 848 N.E.2d 326, 332 (Ind. Ct. App. 2006). Given the whole of the trial court's relevant instructions coupled with our presumption that the jury followed the trial court's instructions, we conclude that any potential error in including the challenged statement was, at most, harmless in light of the trial court's instruction that the filing of a charge is not to be considered as evidence of guilt.

## IV. Denial of Mistrial

[34] Rajamony also contends that the trial court erred in denying his request for a mistrial. In making this contention, Rajamony claims that he requested a mistrial after Officer Eldridge violated the trial court's pre-trial order excluding any mention of the PBT. In this regard, the record indicates that Officer Eldridge testified as follows:

> [Deputy Prosecutor]: Okay. So he failed that test too?
> [Officer Eldridge]: He did.
> [Deputy Prosecutor]: What did you do next?
> [Officer Eldridge]: I then asked if he would submit to a
> portable breath test[.]

Tr. p. 212. At that point, the deputy prosecutor immediately stopped the line of questioning and defense counsel requested permission for counsel to approach the bench. The trial court then conducted an unrecorded off-the-record sidebar conference with counsel. The record does not contain any indication of what was said by either the parties or the trial court during this sidebar conference. In addition, the record does not contain any indication that Rajamony asked the trial court to admonish the jury.

[35] The only indication that defense counsel requested a mistrial during this sidebar comes later when the parties and the trial court were discussing a question for Officer Eldridge that was submitted by a juror regarding the difference between breath and chemical tests. During this conversation the trial court decided that the juror's question would not be asked. The trial court indicated that the parties should move on, to which defense counsel responded "Yes, other than a mistrial that I moved for." Tr. p. 260. The trial court responded "Well, I don't see that happening either." Tr. p. 260.

[36] An appellant bears the burden of presenting a record that is complete with respect to an issue raised on appeal. *Ford v. State*, 704 N.E.2d 457, 461 (Ind. 1998). The record provided in the instant appeal does not contain any indication as to what was argued with respect to Rajamony's request for a mistrial or the reasons for the trial court's apparent decision to deny said motion.

> Because the trial court evaluates first-hand the relevant facts and circumstances at issue and their impact on the jury, it is in the

best position to evaluate whether a mistrial is warranted. [*Ramirez*, 7 N.E.3d at 935]. We accordingly review the trial court's denial of a motion for a mistrial for an abuse of discretion. *Id*. (citing *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989)).

*Weisheit*, 26 N.E.3d at 15.

[37] While we do not know the exact basis on which Rajamony requested a mistrial, the only reasonable assumption was that the mistrial was requested in connection to the mention of the PBT. Based on the record before us on appeal, which again contains no indication that Rajamony requested an admonishment of the jury, we cannot say that the trial court's denial of Rajamony's request for a mistrial was clearly against the logic and effect of the facts and circumstances before the court. *See Brown v. State*, 572 N.E.2d 496, 498 (Ind. 1991) (providing that when an improper argument is alleged to have occurred, the proper procedure is to request an admonishment and, if the alleged error is not corrected, a mistrial); *An-Hung*, 975 N.E.2d at 1276 (providing that an abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it). As such, we conclude that the trial court did not abuse its discretion in denying Rajamony's request for a mistrial.

# V. Final Jury Instructions

[38] Rajamony also contends that the trial court abused its discretion in giving its final instructions to the jury. Specifically, Rajamony claims that the trial court

abused its discretion in rejecting two of his proffered final jury instructions. Again,

> "The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse." [*Kane*, 976 N.E.2d at 1231]. To determine whether a jury instruction was properly refused, we consider: "(1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given." *Lampkins v. State*, 778 N.E.2d 1248, 1253 (Ind. 2002). In doing so, "we consider the instructions 'as a whole and in reference to each other' and do not reverse the trial court 'for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case.'" *Helsley v. State*, 809 N.E.2d 292, 303 (Ind. 2004) (quoting *Carter v. State*, 766 N.E.2d 377, 382 (Ind. 2002)).

*McCowan*, 27 N.E.3d at 763-64.

## A. Defense-Proffered Instruction #4

Rajamony requested that the trial court give the following instruction to the jury:

> A law enforcement officer who has probable cause to believe that a person has committed an Operating While Intoxicated offense such as that charged in this case shall offer the person the opportunity to submit to a chemical test.

Appellant's App. Vol. II, p. 27. In rejecting Rajamony's proffered instruction the trial court instead gave the following instruction:

Final Instruction No. 5.

The right to due process of law does not include the right to be given a chemical sobriety test in all circumstances. To hold otherwise, would be to transform the accused's right to due process into a power to compel the State to gather in the accused's behalf what might be exculpatory evidence.

Appellant's App. Vol. II, p. 19.

As is discussed above in Section I.B., the trial court's instruction represents a correct statement of the law.[2] *See Parker*, 530 N.E.2d at 130; *Hummel*, 173 Ind. App. at 176, 363 N.E.2d at 232. Further, in the instant circumstances, the language of Defense-Proffered Instruction #4, while accurately quoting the Implied Consent Statute, is an incorrect or incomplete statement of the law as it would likely confuse the jury by making it seem as if due process would require a chemical test in all circumstances. We cannot say that the trial court abused its discretion in refusing to give a proffered jury instruction containing an incorrect or incomplete statement of the law. *See Lowden v. State*, 51 N.E.3d 1220, 1224 (Ind. Ct. App. 2016) (providing that the trial court properly refused to give the defendant's proffered jury instruction because the instruction was

---

[2] Rajamony also argues that the trial court abused its discretion in giving Final Instruction No. 5 because it "improperly endorsed the State's case, essentially giving the 'okay' to the Officer's denial of giving [Rajamony] the 'opportunity' to submit to a chemical test in the events leading to this case." Appellant's Br. p. 33. We disagree and read the instruction only to inform the jury that the principles of due process do not require that a chemical test be offered in all circumstances.

not a correct statement of the law).  We therefore conclude that the trial court did not abuse its discretion in this regard.

## B.  Defense-Proffered Instruction #5

Rajamony requested that the trial court give the following instruction to the jury:

> In this case, there has been evidence that the State's agents destroyed and/or interfered with the preservation and production of evidence.  If you believe that the State and/or its agents engaged in such conduct, then you may infer that such evidence would have been unfavorable to the State and beneficial to the accused.

Appellant's App. Vol. II, p. 28.  In rejecting Rajamony's proffered instruction the trial court instead gave the following instruction:

> Final Instruction No. 8.
>
> In this case there has been evidence that the State's agents failed to provide evidence that was properly requested by the accused. If you believe that the State and/or its agents failed to provide this evidence not simply by bad judgment or negligence, but rather as a result of conscious wrong doing, then you may infer that such evidence would have been unfavorable to the State and beneficial to the accused.

Appellant's App. Vol. II, p. 21.

Again, as is discussed above in Sections I.B. and I.C., the trial court's instruction represents a correct statement of the law.  *See Land*, 802 N.E.2d at

49. As was the true with Defense-Proffered Instruction #4, Defense-Proffered Instruction #5 presents an incorrect or incomplete statement of the law. In addition, Final Instruction No. 8 adequately covers the substance of Defense-Proffered Instruction #5. As such, we conclude that the trial court did not abuse its discretion in rejecting Defense-Proffered Instruction #5. *See McCowan*, 27 N.E.3d at 764 (providing that in determining whether a trial court abused its discretion in rejecting a proffered instruction, we consider whether the substance of the instruction was covered by other instructions that were given); *Lowden*, 51 N.E.3d at 1224 (providing that the trial court properly refused to give the defendant's proffered jury instruction because the instruction was not a correct statement of the law).

# VI. Prosecutorial Misconduct

[43] Rajamony last contends that the trial court abused its discretion in allowing the State to commit prosecutorial misconduct during its closing argument. Specifically, Rajamony argues that the State committed prosecutorial misconduct by citing to our decision in *Hummel* during its closing argument.

[44]
> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006), quoted in *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. *Mahla v. State*, 496 N.E.2d 568, 572 (Ind. 1986). "Whether a prosecutor's

argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Cooper*, 854 N.E.2d at 835 (emphasis added) (citations omitted).

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). "To preserve a claim of prosecutorial misconduct, the defendant *must*—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial." *Id*. (internal citations omitted, emphasis added).

[45] In the instant matter, although Rajamony objected to the State's line of argument prior to the presentation of the State's closing argument, Rajamony did not—at the time the State committed the alleged misconduct—request that the trial court admonish the jury or move for a mistrial. As such, Rajamony is only entitled to relief if the alleged misconduct amounted to fundamental error. *See Brown v. State*, 799 N.E.2d 1064, 1066 (Ind. 2003) (holding that because the defendant failed to request an admonishment or move for a mistrial when the trial court overruled his objection to the prosecution's comments during closing argument, his claim of prosecutorial misconduct is procedurally foreclosed and reversal on appeal requires a showing of fundamental error).

[46] Again, Rajamony argues that the State committed prosecutorial misconduct by citing to our decision in *Hummel* during its closing argument. We have previously concluded, however, that "'[i]t is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based upon

his analysis of the evidence.'" *Steinberg v. State*, 941 N.E.2d 515, 531 (Ind. Ct. App. 2011) (quoting *Hand v. State*, 863 N.E.2d 386, 394 (Ind. Ct. App. 2007)), *trans. denied*. Furthermore, Rajamony was free to argue, and in fact did argue, during his closing argument that *Hummel* did not apply to the instant case. Rajamony has failed to prove that the State committed misconduct, much less that the alleged misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. As such, we conclude that the trial court did not abuse its discretion in this regard.

## Conclusion

[47] Rajamony contends that the trial court abused its discretion in a number of ways. Upon review, we find each of these contentions to be without merit.[3] Accordingly, we affirm the judgment of the trial court.

[48] The judgment of the trial court is affirmed.

Vaidik, C.J., and Brown, J., concur.

---

[3] Rajamony also argues that even if none of the alleged errors individually constituted reversible error, the cumulative effect of the alleged errors amounted to reversible error. Because we find no error by the trial court, we disagree.