## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 20 2018, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Nussbaum, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 20, 2018 <br><br> Court of Appeals Case No. <br> 67A05-1704-CR-836 <br><br> Appeal from the Putnam Circuit Court <br><br> The Honorable Matthew L. Headley, Judge <br><br> Trial Court Cause No. <br> 67C01-1506-FA-115 |

**Mathias, Judge.**

[1] Following a jury trial in Putnam Circuit Court, Michael Nussbaum ("Nussbaum") was convicted of eight counts of Class A felony child molesting

and sentenced to an aggregate term of ninety years of incarceration. Nussbaum appeals and presents three issues, which we restate as follows:

I. Whether the trial court abused its discretion by denying Nussbaum's motion to dismiss due to the fact that the State either lost or destroyed a video of prior interviews with the victims in which they did not disclose any molestation;

II. Whether the trial court abused its discretion when it redacted statements from one of the victim's recorded cross-examination regarding her exposure to pornographic materials; and

III. Whether the trial court abused its discretion by permitting the jury to see and hear the video recordings of the forensic interviews of the victims when only an audio recording of the defense's cross-examination of the victims was available.

[2] We affirm.

## Facts and Procedural History

[3] From the spring of 2006 until the summer of 2012, Nussbaum's wife, Holly, ran a daycare service at the couple's home. Among the children who stayed at the Nussbaum's daycare were S.P., S.G., and K.C., who were approximately five and one-half years old, two and one-half years old, and five years old, respectively, when each girl began to attend the daycare. Nussbaum helped his wife care for the children.

[4] In 2012, S.P. reported to her mother than she had seen Nussbaum do sexually inappropriate things with S.G. S.P.'s mother reported this information to the local office of the Indiana Department of Child Services ("DCS") and to S.G.'s father. On June 16, 2012, S.P.'s mother took her to Susie's Place Child

Advocacy Center, where she was forensically interviewed. However, she did not disclose any sexual abuse during the interview. S.G. was also interviewed at Susie's Place on August 18, 2012, but she too did not disclose any abuse and denied that anything had happened to her. DCS also interviewed Nussbaum, who denied that he had molested the girls. Accordingly, DCS considered the allegations unsubstantiated and did not pursue the matter further.

[5] One year later, in August 2013, S.G. told her father that S.P. had told the truth and that "something had happened." Tr. Vol. 3, p. 146. S.G.'s father, however, was unable to glean any details from his daughter. He then took her to his sister's house, hopeful that S.G. would be more forthcoming with her aunt. After talking with S.G., her aunt contacted DCS, who began another investigation into the allegations of sexual abuse. DCS also contacted S.P.'s mother to inform her that S.G. stated that S.P. had also been molested.

[6] Both girls were again taken to Susie's Place for a second round of forensic interviews. S.G., who was by then nine years old, stated that Nussbaum had, on multiple occasions, performed anal sex on her and made her perform oral sex on him. She also stated that S.P. was present during these molestations and had herself been subject to the abuse. When S.P., who was by then seven years old, was interviewed, she too stated that Nussbaum had made her perform oral sex on him and had performed anal sex on her.

[7] In May 2014, K.C. told her mother that Nussbaum had sexually abused her too. K.C. was also interviewed at Susie's Place. During the interview, K.C.,

who was by then eleven years old, told the interviewer that Nussbaum had performed oral sex on her.

[8] On June 2, 2015, a grand jury charged Nussbaum in an indictment with eight counts of Class A felony child molesting. On January 25, 2016, Nussbaum filed a discovery request seeking copies of the recordings of the forensic interviews of S.G. and S.P. that took place in 2012, when the girls denied or failed to disclose any abuse. Nussbaum later filed a motion to compel disclosure of recordings of the interviews from 2012. The State responded that it was unable to locate the recordings of the 2012 interviews.

[9] At the hearing on Nussbaum's motion to compel, the State acknowledged that S.G. and S.P. were interviewed at Susie's Place in 2012 and did not disclose any abuse. Shelly Chadd ("Chadd"), the director of DCS's Putnam County office, testified at the hearing that she was aware of S.G. and S.P.'s 2012 interviews and that DCS concluded at that time that the allegations of molestation by Nussbaum were unsubstantiated. Chadd, however, did not recall watching the videos and could not remember any details of the interviews. Chadd explained that, when the interviews had been conducted, the recordings were given to a law enforcement officer who was present. Trisha Guinn ("Guinn"), a DCS investigator who also attended the interviews, testified that the recordings of the 2012 interviews were given to Charlie Bollinger ("Bollinger"), an investigator who worked for the Putnam County Prosecutor's Office in 2012. Guinn could not recall any details of the interviews

other than the order in which the girls were interviewed and that S.G. had denied that any molestation had occurred.

[10] On July 21, 2016, Nussbaum filed a motion to dismiss the first seven of the eight counts—the counts alleging that Nussbaum had molested S.G. and S.P.—based upon the State's failure to preserve the recordings of the 2012 interviews. The trial court denied Nussbaum's motion to dismiss on January 18, 2017, concluding:

> The 2012 "lost tapes" are the central issue. A Department of Child Services case manager, Department of Child Services Director, Prosecutor Investigator and Child Advocacy Representative (who conducted the interviews) all testified that no one can find the tapes. All agree that the children did not disclose any abuse by Defendant. In fact, because there was a nondisclosure, the interview ceased, the Department of Child Services unsubstantiated its case[,] and no prosecution resulted. The case was effectively closed.
>
> [The] Court finds that the tapes are potentially useful evidence and not constitutionally material. The Defendant may cross exam[ine] each of the State's witnesses on their negligence of keeping evidence (and not following established protocol). Each of these witnesses admitted that this loss of evidence is "on them" but no bad faith has been shown. This will clearly go to the credibility of those witnesses and they can be vigorously cross-examined on the issue in front of the jury.

Appellant's App. Vol. 3, pp. 21–22.

[11] Before the trial court issued its order denying Nussbaum's motion to dismiss, the court held a child hearsay hearing regarding the three victims. During the

hearing, Nussbaum's trial counsel cross-examined the children via closed-circuit television. On cross-examination, S.G. admitted that she had a laptop computer and that she had used this computer to view online images and videos of men and women engaged in sexual activities. Thereafter, the State filed a motion in limine requesting that Nussbaum make no reference to S.G.'s, or any other witness's, prior sexual history outside of that allowed by Indiana Evidence Rule 412. The trial court initially denied the State's motion in limine, but later reversed its decision and ordered that evidence regarding S.G.'s viewing pornography on the internet would not be admissible.

[12] A three-day jury trial commenced on February 20, 2017. During trial, the trial court admitted into evidence video recordings of the 2013 forensic interviews with S.G., S.P., and K.G., and the videos were played to the jury. Nussbaum requested that the jury be permitted to listen to only the audio of the recordings, because only audio recordings were made of his cross-examination of the children at the child hearsay hearing. The trial court denied Nussbaum's request. Thus, the jury watched video recordings of the forensic interviews but heard only audio recordings of Nussbaum's cross-examination of the girls at the child hearsay hearing.

[13] At the conclusion of the trial, the jury found Nussbaum guilty as charged. At a sentencing hearing held on March 23, 2017, the trial court sentenced Nussbaum to the advisory sentence of thirty years on each count. The court ordered that the sentences on the counts involving each individual victim be served concurrently, but consecutively to the counts involving the other two victims,

for an aggregate sentence of ninety years of incarceration. Nussbaum now appeals.

## I. Motion to Dismiss

[14] Nussbaum first argues that the trial court erred in denying his motion to dismiss the charges related to S.G. and S.P. due to the failure to preserve the recordings of the 2012 interviews of these girls. We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *Filice v. State*, 886 N.E.2d 24, 32 (Ind. Ct. App. 2008), *trans. denied*. A trial court abuses its discretion only when its decision is clearly against the logic and effect of the facts and circumstances or when the court has misinterpreted the law. *Id*.

[15] It is well settled that a criminal defendant has the right to examine physical evidence in the hands of the State. *Roberson v. State*, 766 N.E.2d 1185, 1187 (Ind. Ct. App. 2002), *trans. denied*. The State's failure to preserve such evidence may, under certain circumstances, constitute the denial of the due process of law. *Id*. To determine whether a failure to preserve evidence deprives the defendant of due process, we first determine whether the evidence at issue was "potentially useful evidence" or "materially exculpatory evidence." *Id*. (citing *Chissell v. State*, 705 N.E.2d 501, 504 (Ind. Ct. App. 1999), *trans. denied*).

[16] If the evidence was only potentially useful, the defendant must establish bad faith on the part of the State. *Albrecht v. State*, 737 N.E.2d 719, 724 (Ind. 2000) (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). "The United States Supreme Court has described potentially useful evidence as 'evidentiary

material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *Roberson*, 766 N.E.2d at 1188 (quoting *Youngblood*, 488 U.S. at 57)).

[17]     In contrast, materially exculpatory evidence, as the term suggests, is evidence of an exculpatory nature. And "exculpatory" had been defined as "'[c]learing or tending to clear from alleged fault or guilt; excusing.'" *Albrecht*, 737 N.E.2d at 724 (quoting *Samek v. State*, 688 N.E.2d 1286, 1288 (Ind. Ct. App. 1997)).[1] To meet the standard of being "materially exculpatory," the evidence at issue "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. Unlike merely potentially useful evidence, the State's good or bad faith in failing to preserve materially exculpatory evidence is immaterial. *Roberson*, 766 N.E.2d at 1188 (citing *Chissell*, 705 N.E.2d at 504).

[18]     Here, Nussbaum argues that the lost recordings of the 2012 interviews were materially exculpatory evidence and not merely potentially useful evidence. We disagree. The parties agree that, in the 2012 interviews, neither S.G. nor S.P. disclosed any abuse by Nussbaum. Thus, when DCS declared the initial allegations against Nussbaum to be unsubstantiated, any potential exculpatory nature of the recordings was not apparent, as no charges were brought against

---

[1] The *Samek* court itself quoted this definition from Black's Law Dictionary. *See* 688 N.E.2d at 1288 (citing Black's Law Dictionary 566 (6th ed.1990)).

Nussbaum at that time. Moreover, the statements of S.G. and S.P. do not excuse, clear, tend to clear, or otherwise exonerate Nussbaum from guilt. The fact that the girls did not disclose any abuse or denied any abuse does not mean that no abuse occurred. Indeed, it is not uncommon for victims of sexual abuse to be hesitant to talk about the abuse they have suffered. We instead consider S.G.'s and S.P.'s statements in the 2012 interviews to simply be evidence that would impeach the credibility of their later statements that Nussbaum did abuse them.

[19] Accordingly, we conclude that the recordings of the 2012 interviews were not materially exculpatory evidence, but only potentially useful evidence. As such, in order to establish a denial of due process sufficient to support a dismissal of the charges, Nussbaum must also show that the State destroyed the evidence in bad faith. In this context, "bad faith" has been defined as being "not simply bad judgment or negligence, but rather implies the conscious doing of wrong because of dishonest purpose or moral obliquity." *Samek*, 688 N.E.2d at 1289 (quoting Black's Law Dictionary 139 (6th ed. 1990)).

[20] Here, there is no indication of such moral obliquity or dishonest purpose in the failure to preserve the recordings.[2] This is not to say that we condone the failure

---

[2] Nussbaum notes that the Indiana Archives and Records Administration policy or rule 2008-33 provides in relevant part:

> Retention & Disposition: TRANSFER to the RECORDS CENTER one (1) year after assignment of unsubstantiated status. DESTROY after an additional twenty-three (23) years in the RECORDS CENTER. TOTAL RETENTION: twenty-four (24) years.

Available at: http://www.in.gov/iara/3262.htm. Nussbaum claims that this policy is applicable to DCS and its failure to follow this policy should be considered as *per se* bad faith. But the authority cited by Nussbaum in

of the prosecutor's office and DCS to preserve the recording. To the contrary, it reflects poorly on both. But there is simply no indication that either the prosecutor's office or DCS acted in bad faith.

We also cannot ignore that the jury was made well aware that S.G. and S.P. did not disclose any abuse during the 2012 interviews. Nussbaum cross-examined both S.G. and S.P. regarding their prior statements and also cross-examined those responsible for the retention of the recordings. Thus, the jury was aware of the general nature of the content of the lost recordings and the fact that the State failed to preserve them.

An almost identical situation was before the District Court of Appeals of Florida in *State v. Larrinaga,* 569 So.2d 911 (Fla. Dist. Ct. App. 1990). In that case, a police detective spoke with two children in a videotaped interview, in which both children denied that the defendant had sexually abused them. The police therefore closed the investigation and erased the videotape one year later. Thereafter, the investigation was reopened when the children stated that the defendant had, in fact, sexually abused them. The trial court granted the defendant's motion to dismiss on grounds of the destroyed evidence. On appeal, however, the *Larrinaga* court reversed. *Id*. at 913. The court determined that the destroyed videotape was only potentially useful to the defendant's case

---

support of his argument notes that "a violation of a statute enacted for reasons of safety is negligence *per se*, or negligence as a matter of law." *N. Indiana Transit, Inc. v. Burk*, 228 Ind. 162, 172, 89 N.E.2d 905, 909 (1950). The Archives and Records Administration policy is not a statute enacted for reasons of safety. And even if it were, the failure to follow it would establish at most negligence, not bad faith. *See Samek*, 688 N.E.2d at 1289 (noting that bad faith must be more than mere bad judgment or negligence).

and noted that the trial court had found that the tape was not destroyed in bad faith. And although the detective could not recall the details of the interview, the defendant would still be able to present his account of the interview, i.e., that the children denied abuse at that time. *Id*. The court therefore held that the defendant was not entitled to dismissal of the charges. *Id*.

[23] The same is true here. There was no finding of bad faith, the evidence on the tapes was only potentially useful, and Nussbaum was still able to present to the jury the gist of the information gleaned in the 2012 interviews, i.e., that S.G. and S.P. failed to disclose any abuse at that time. Accordingly, we conclude that the trial court did not abuse its discretion when it denied Nussbaum's motion to dismiss based upon the State's failure to preserve the recordings of the 2012 interviews.

## II. Exclusion of Evidence

[24] Nussbaum also claims that the trial court abused its discretion when it excluded evidence that S.G. had viewed pornography on her computer. Decisions regarding the admission of evidence are left to the sound discretion of the trial court. *Harrison v. State*, 32 N.E.3d 240, 250 (Ind. Ct. App. 2015), *trans. denied*. On appeal, we review the court's decision only for an abuse of that discretion. *Id*. The trial court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id*.

[25] Nussbaum claims that evidence regarding S.G.'s exposure to pornography "could combat the likely assumption by the jury that she, and the other girls, would not be able to describe the sex acts that were the basis of the charges against Nussbaum unless those acts had actually happened." Appellant's Br. at 18. Nussbaum argues that "the sexual innocence inference theory made the testimony from S.G. admissible, and in turn would allow the defense to connect S.G. to the other girls to demonstrate that they all had been exposed to this knowledge about sex acts."[3] *Id.*

[26] The State counters that this evidence is inadmissible under Indiana Evidence Rule 412, sometimes referred to as the "Rape Shield Rule." *See Oatts v. State*, 899 N.E.2d 714, 720 (Ind. Ct. App. 2009) (citing *State v. Walton*, 715 N.E.2d 824, 826 (Ind. 1999)).[4] Evidence Rule 412(a) governs the admissibility of evidence of past sexual conduct and provides in relevant part:

---

[3] Nussbaum also complains that the State did not make a contemporaneous objection during the child hearsay hearing when he cross-examined S.G. regarding her viewing pornography on her laptop. But the jury was not present during this hearing, and the State sought to exclude S.G.'s testimony on this issue prior to the start of trial. Moreover, during trial, Nussbaum objected to the fact that the portions of his cross-examination regarding S.G.'s having viewed pornography had been excised from the recording of his cross-examination played to the jury. The trial court overruled this objection. Thus, the trial court had an opportunity to make a final ruling on the admissibility of this evidence at the time it was presented to the jury, which is the underlying rationale for the contemporaneous objection requirement. *See Clausen v. State*, 622 N.E.2d 925, 928–29 (Ind. 1993) (noting that the purpose of the contemporaneous objection requirement is to afford the trial court an opportunity to consider the evidence in the context in which it is being offered and make a final determination on admissibility).

[4] Evidence Rule 412 incorporates the basic principles of Indiana Code section 35-37-4-4, the Rape Shield Act. *Oatts*, 899 N.E.2d at 720 (citing *Walton*, 715 N.E.2d at 826). To the extent that this statute conflicts with Evidence Rule 412, the evidentiary rule controls. *See id.* at 720 n.8 (citing *Williams v. State*, 681 N.E.2d 195, 200 n.6 (Ind. 1997)). Neither party bases their argument on this statute.

**(a) Prohibited Uses.** The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:

> (1) evidence offered to prove that a victim or witness engaged in other sexual behavior; or

> (2) evidence offered to prove a victim's or witness's sexual predisposition.

**(b) Exceptions.**

> (1) Criminal Cases. The court may admit the following evidence in a criminal case:

>> (A) evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

>> (B) evidence of specific instances of a victim's or witness's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

>> (C) evidence whose exclusion would violate the defendant's constitutional rights.[5]

[27]     Here, the evidence at issue consisted of S.G.'s testimony that she had viewed pornography on her computer. Under the plain language of Evidence Rule 412(a), this evidence was inadmissible because it was offered to prove that S.G. engaged in sexual behavior (viewing pornography). Nor was it admissible under

---

[5] In addition to these explicit exceptions, one common-law exception survived the 1994 adoption of the Indiana Rules of Evidence, i.e., evidence of a prior accusation of rape is admissible if: (1) the victim has admitted that his or her prior accusation of rape was false; or (2) the victim's prior accusation is demonstrably false. *Oatts*, 899 N.E.2d at 721 (citing *Walton*, 715 N.E.2d at 826–828). This common-law exception is inapplicable in the present case.

the first two exceptions provided in Rule 412(b): it was not offered to prove that someone else was the source of any physical evidence, nor was it offered to prove consent, which would itself not be relevant in a prosecution for child molesting.

[28] Still, Evidence Rule 412(b)(1)(C) provides that a court may admit evidence that would otherwise be excluded under the rule if such exclusion would violate the defendant's constitutional rights. Nussbaum argues that the exclusion of the evidence in question violated his constitutional right to cross-examine witnesses and present a defense. As this court noted in *Oatts*, the right to cross examination is not absolute. 899 N.E.2d at 722 (citing *Tague v. Richards*, 3 F.3d 1133, 1137 (7th Cir. 1993)). Instead, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). And the right to confront witnesses "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Id.* (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).

[29] There are situations in which application of Evidence Rule 412 might violate a defendant's Sixth Amendment rights, e.g. "when the trial court restricts a defendant from giving his own account of the events at issue," or when "a defendant establishes that the victim engaged in a similar pattern of sexual acts." *Id.* The exclusion of the evidence at issue here—that S.G. had viewed pornography on her computer—did not restrict Nussbaum from giving his own

account of the events at issue. To the contrary, he was able to testify to the jury that he did nothing sexually inappropriate to the girls. Nor did the excluded evidence tend to show that S.G. had engaged in a similar pattern of sexual acts.

[30] Instead, Nussbaum claims that exclusion of this evidence prevented him from countering the so-called "sexual innocence inference" theory. This theory is "'based on the premise that because most children of tender years are ignorant of matters relating to sexual conduct, a child complainant's ability to describe such conduct may persuade the jury that the charged conduct in fact occurred.'" *Id.* at 724 (quoting *Grant v. Demskie*, 75 F.Supp.2d 201, 213 (S.D.N.Y. 1999), *aff'd by* 234 F.3d 1262 (2nd Cir. 2000)).[6] This theory also reasons that, "'[t]o demonstrate that the child had acquired sufficient knowledge to fabricate a charge against the defendant . . . the court should allow the defense to offer evidence that the child acquired sexual experience with someone else before he or she accused the defendant.'" *Id.*

[31] Nussbaum claims that the jury should have been permitted to hear that S.G. had viewed on her computer sexual behavior similar to that she accused Nussbaum of, i.e. oral, vaginal, and anal sex. This, he argues, would dispel any inference of sexual innocence on the part of S.G.

[32] The weakness with Nussbaum's argument is that there is no indication as to precisely *when* S.G. viewed the pornographic images on her computer. If she

---

[6] The *Grant* court was in turn quoting the article *Consent, Credibility, and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior*, 44 CATH. U. L. Rev. 709, 806 (1995), by Clifford S. Fishman.

had done so *before* she made her accusations against Nussbaum, then this evidence might have been relevant to dispel any inference of sexual innocence on the part of S.G. *See Oatts*, 899 N.E.2d at 724 (noting that a court should allow the defense to offer evidence that the child acquired sexual experience *before* she accused the defendant) (citing *Grant*, 75 F.Supp.2d at 213). If, however, S.G. viewed the images *after* she made her accusations against Nussbaum, we fail to see how this could have been used to rebut any inference of sexual innocence, as by that point, she would have already been subject to sexual acts. *See id*.

[33] At trial, Nussbaum noted that there was evidence that S.G. had access to the laptop when she went to the Nussbaums' daycare. But this does not establish that she necessarily viewed the pornographic images at this time. As the proponent of the evidence, it was Nussbaum's burden to establish that S.G. viewed the pornography before she made her statements implicating Nussbaum. *See C.S. v. State*, 71 N.E.3d 848, 852–53 (Ind. Ct. App. 2017) ("The proponent of evidence has the burden to show its admissibility."). Because of the uncertainty regarding when S.G. viewed the pornography, the trial court did not abuse its discretion when it excluded this evidence.

[34] Even if we were to conclude otherwise, we do not think that the exclusion of this evidence constituted reversible error. We do not think the informing the jury that S.G. had viewed pornography would have played a significant role in the jury's decision to convict, especially given the unequivocal testimony of the three victims. *See Teague v. State*, 978 N.E.2d 1183, 1189 (Ind. Ct. App. 2012)

(noting that any evidentiary error is harmless if there is substantial independent evidence of guilt that satisfies us that there is no substantial likelihood the challenged evidence contributed to the conviction).

### III. Recordings of the Child Hearsay Hearings

[35] Lastly, Nussbaum argues that the trial court erred by permitting the jury to see and hear the video recordings of the forensic interviews of the victims when only an audio recording of the defense's cross-examination of the victims was available. In addressing this argument, we again note that questions regarding the admissibility of evidence are entrusted to the discretion of the trial court. *Harrison*, 32 N.E.3d at 250.

[36] Here, video recordings of the forensic interviews of the victims were made. But only audio recordings of Nussbaum's cross-examination of the victims were made during the child-hearsay hearing. Both of these recordings were admitted into evidence and played before the jury. At trial, Nussbaum requested that only the audio portion of the video recordings of the forensic interviews be played for the jury. The trial court denied this request.

[37] Nussbaum argues that, by allowing the jury to view the video recording of the forensic interviews, "the jury was permitted to view the sympathetic demeanor developed during the accommodating . . . child forensic interview process, but could not see the witnesses as they were confronted." Appellant's Br. at 24. This, he claims, created an unfair advantage to the State.

[38] The State argues that, by not objecting to the fact that the child hearsay hearings were not recorded on video, Nussbaum has waived this argument for purposes of appeal. There is some merit to the State's position. By the time the child hearsay hearings were held, Nussbaum was aware that the forensic interviews of the children had been recorded on video. If Nussbaum felt that only recording the audio of the child hearsay hearings would prejudice him, he should have requested that the trial court make video recordings of his cross-examination of the victims. Thus, Nussbaum has waived any argument regarding the failure of the trial court to ensure that video recordings of the child hearsay hearings were made.

[39] However, Nussbaum's appellate argument is not that the trial court erred by failing to make a video recording of the child hearsay hearing. His argument is that the trial court should have "level[ed] the playing field" and played only the audio portion of the forensic interviews. And Nussbaum affirmatively asked the trial court that the jury be allowed to hear only the audio portions of the recordings of the forensic interviews because the jury could only hear the audio of his cross-examination. Tr. Vol. 3, p. 159.

[40] We see little difference between (1) arguing that the trial court erred by failing to make video recordings of the child hearsay hearings, and (2) arguing that only the audio from the recordings of the forensic interviews should be played because there was no video recording made of the child hearsay hearings. The basic premise underlying both arguments is that there was no video recording made of the child hearsay hearings. Yet Nussbaum did not object to the fact the

child hearsay hearings were recorded only on audio at the time the recordings were made. This is akin to invited error, and at the very least, constitutes waiver of the issue for purposes of appeal.

[41] Waiver notwithstanding, we would still not conclude that the trial court's decision to allow the jury to view the video recordings of the forensic interviews constituted reversible error. Surely it is the better practice for both the interviews and the child hearsay hearings to be recorded in the same manner, preferably on some form of video media. But we cannot say that allowing the jury to view the video recording of the forensic interviews amounted to reversible error. There is no indication that the cross-examination of the children was recorded only on audio just to hamstring the defense. In fact, there is little explanation in the record for why the child hearsay hearings were not video recorded. Be that as it may, we cannot say that the trial court abused its considerable discretion on evidentiary matters when it allowed the video recording of the forensic interviews to be played to the jury.

## Conclusion

[42] The trial court did not err in denying Nussbaum's motion to dismiss based on the fact that the recordings of the 2012 interviews with S.G. and S.P. were unavailable. The substance of these interviews—that the children did not disclose any abuse at that time—was made known to the jury, and Nussbaum was permitted to question S.G. and S.P. regarding their prior inconsistent statements. He was also allowed to cross-examine those responsible for keeping track of this recording, thereby exposing the jury to their arguably negligent

handling of this evidence. More importantly, this evidence was only potentially useful impeachment evidence, and there is no indication that the State destroyed or misplaced the video of the 2012 interviews in bad faith. Furthermore, the trial court did not abuse its discretion by excluding evidence that S.G. had viewed pornography on her laptop because there is no indication as to when she viewed the pornography, and it is not uncommon for children to be exposed to pornography online. Thus, we conclude that this evidence would do little to dispel any inference of sexual innocence. Lastly, the trial court did not err in allowing the jury to view the video recordings of the forensic interviews despite the fact that only audio recordings of Nussbaum's cross-examination of the victims at the child hearsay hearings was available. Accordingly, we affirm the judgment of the trial court.

[43]    Affirmed.


Najam, J., and Barnes, J., concur.